## 39143. SMITH v. THE STATE.

WELTNER, Justice.

Smith was convicted of burglary in the Superior Court of Dougherty County and sentenced to 20 years probation, subject to certain terms and conditions, including the conditions that he ". . . not take into his body any substance prohibited or controlled by any law of the State of Georgia or the United States . . .," and that he "[a]void injurious and vicious habits — especially alcoholic intoxication and narcotics or other dangerous drugs unless prescribed lawfully." Another condition stated: "Probationer shall, from time to time, upon oral or written request by a probation supervisor or any city, county, or state law enforcement officer, produce a breath, spittle, urine, and/or blood specimen for analysis for the possible presence of a substance prohibited or controlled by any law of the State of Georgia or the United States."

On May 3, 1982, Smith reported to his probation officer, as required under the terms of his probation. Prior to reporting, he had received a telephone call from the Dougherty County Police Department instructing him to come for a urinalysis test on his reporting date, his name having been selected at random from a list of all probationers in the county. Upon reporting, Smith was compelled to give a urine specimen, which then was analyzed on a "SYVA EMIT 1000 Laboratory," a device which purportedly can detect the presence of cannabinoids in a subject's system. The subsequent analysis revealed the presence of cannabinoids, and Smith immediately was arrested and placed in jail.

On June 16, 1982, after a hearing in the superior court, Smith's probationary status was revoked and he was sentenced to 90 days in jail.

1. Smith contends that the trial judge erred in failing to disqualify himself from hearing the petition for revocation, and in failing to assign Smith's recusal motion to another judge for hearing. In his recusal motion Smith alleged that he intended to challenge the accuracy of the SYVA EMIT 1000 Laboratory and the constitutionality of its use on probationers, that the trial judge had

been instrumental in initiating the use of the laboratory in Dougherty County, and had made public statements regarding its accuracy and utility.

Canon 3C of the Georgia Code of Judicial Conduct provides: "(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where: (a) he has a personal bias or prejudice concerning a party...." "[W]hen a trial judge in a case pending in that court is presented with a motion to recuse accompanied by an affidavit, the judge's duty will be limited to passing upon the legal sufficiency of the affidavit, and if, assuming all the facts alleged in the affidavit to be true, recusal would be warranted, then another judge must be assigned to hear the motion to recuse." *State v. Fleming,* 245 Ga. 700, 702 (267 SE2d 207) (1980). " 'The test is whether, *assuming the truth of the facts alleged,* a reasonable person would conclude that a personal as distinguished from a judicial bias exists.' " Id.

Assuming the allegations upon which Smith's motion is based to be true, they show at most an inclination relative to evidentiary matters rather than a personal bias or prejudice concerning a party. A brief consideration will demonstrate the necessity of this distinction, for without such a demarcation, no judge might ever rule but once upon a disputed question of law or factual circumstances without forever thereafter being disqualified from hearing similar matters. Accordingly, the trial judge's action in disposing of the recusal motion was proper.

2. Smith contends that the trial court erred in refusing to continue the hearing because the State failed to furnish a list of witnesses. Testifying for the State were Smith's probation officer, the laboratory operator, and a representative from the State Crime Laboratory. The transcript reveals that the trial court did continue the hearing for a short time to give Smith's attorney a chance to question the State's witnesses. This was sufficient compliance with the requirements of Morrissey v. Brewer, 408 U. S. 471, 489 (92 SC 2593, 33 LE2d 484) (1972). See Gagnon v. Scarpelli, 411 U. S. 778, 782 (93 SC 1756, 36 LE2d 656) (1973).

3. The condition that probationer refrain from the ingestion of controlled substances is clearly reasonable. The requirement that a probationer, upon request, produce body fluid for analysis is reasonable as an aid in determining compliance with the prohibition upon the use of controlled substances. See *Mann v. State,* 154 Ga. App. 677 (4) (269 SE2d 863) (1980); see also Isaacs v. State, 351 S2d 359, 360 (Fla. App. 1977). Smith contends that the latter condition is too broad, in that such specimens may be requested by any probation officer or by any city, county or state law enforcement officer, and

that this might result in official harassment unconnected with his probationary status. See, e.g., State v. Jones, 584 P2d 349, 350 (Or. App. 1978) (involving consent to searches by any law enforcement officer). This contention is without merit, as it is clear that the request for urinalysis made upon Smith arose out of his probationary status, and was made by a local law enforcement officer, in the county where he had been convicted, with the express intention of monitoring his compliance with the terms of his probation. See *Hunter v. State,* 139 Ga. App. 676 (2) (229 SE2d 505) (1976).

4. Smith contends that the trial court erred in allowing into evidence the results of the urinalysis, on the ground that the SYVA EMIT 1000 test is unreliable. The trial court heard expert testimony concerning the operation and accuracy of the test before admitting the results into evidence.

"In determining whether a given scientific principle or technique is a phenomenon that may be verified with such certainty that it is competent evidence in a court of law, . . . it is proper for the trial judge to decide whether the procedure or technique in question has reached a scientific stage of verifiable certainty, or in the words of Professor Irving Younger, whether the procedure 'rests upon the laws of nature.' The trial court may make this determination from evidence presented to it at trial by the parties; in this regard expert testimony may be of value. Or the trial court may base its determination on exhibits, treatises or the rationale of cases in other jurisdictions. [Cits.] The significant point is that the trial court makes this determination based on the evidence available to him rather than by simply calculating the consensus in the scientific community." *Harper v. State,* 249 Ga. 519, 524-526 (292 SE2d 389) (1982).

In this case the ruling of the trial court as to admissibility is supported by the evidence. The procedure followed below was in compliance with *Harper,* supra, and we find no error.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 4, 1983.

*William R. Wilburn,* for appellant.
*Hobart M. Hind, District Attorney,* for appellee.