Michael PELLA, Plaintiff,

v.

Paul ADAMS; Howard Pyle; Edward
Forrest; Bryn Armstrong; and
Harold Snyder, individually, Defendants.

No. CV–R–85–98–ECR.

United States District Court,
D. Nevada.

May 8, 1986.

James W. Wessel, Carson City, Nev., for plaintiff.

Brian McKay, Atty. Gen. by James J. Rankl, Deputy Atty. Gen., Carson City, Nev., for defendants.

### ORDER

EDWARD C. REED, Jr., District Judge.

Defendants Adams, Forrest, Pyle, Armstrong, and Snyder move this Court for summary judgment pursuant to Fed.R. Civ.P. 56. Plaintiff Michael Pella, through his counsel, James Wessel, opposes this motion.

Pella, seeking nominal, compensatory and punitive damages, filed this civil rights action pursuant to 42 U.S.C. § 1983.[1] Pella also seeks damages for a pendent state claim. Pella, an inmate at the Northern Nevada Correctional Center (NNCC), alleges violation of his rights under the Fourth and Fourteenth Amendments. Pella alleges that the disciplinary committee, in ruling on charges brought against Pella for violations of the Code of Penal Discipline, violated his constitutional rights. Pella argues that his due process rights were violated because the committee based its guilty decision on an unreliable urinalysis. The uri-

nalysis is attacked as being an inaccurate test and being performed by an unqualified technician. Pella further alleges that because there was no probable cause to subject him to a urinalysis, the required test violated his rights to be free from illegal search and seizure. Pella further alleges that defendants acted intentionally, maliciously, and capriciously, causing him emotional distress.

### FACTS[2]

On November 7, 1984, Pella appeared before a disciplinary committee at the NNCC. The disciplinary committee was comprised of defendants Pyle, Adams, and Forrest. Pella was charged with Code of Penal Discipline violations MJ–26, possession of contraband, MJ–37, attempt or conspiracy to commit a major violation, MJ–39, violation of a local, state or federal criminal statute or law, and G–16, unauthorized possession of currency. Pyle Affidavit at 2.

At the disciplinary hearing inmate counsel substitute Charles Randall represented Pella. Pella waived the presence of the reporting officer, Sgt. Jack Gentry, and also waived recording of the hearing. Pella pleaded guilty to G–16, possession of unauthorized currency, and not guilty to the other charges. *Id.*

In arriving at a decision the disciplinary committee relied on the reporting employee's written narrative wherein Sgt. Gentry stated that on August 31, 1984, during a routine search of the dormitory, he discovered several small seeds of a green leafy substance on the rug in Pella's living area. In addition, Sgt. Gentry discovered a total of $22.42 in coins in Pella's locker and concealed behind the headboard of his bed. *Id.* at 3.

On the basis of these findings, Sgt. Gentry required Pella to produce a urine sample which C/O Christopher Rounds secured on August 31, 1984. Subsequently, on October 26, 1984, C/O Gordon Strande tested

---

1. Pella also sought injunctive relief to have his good time credits restored. This Court dismissed those claims on March 22, 1985. *See* Order, *Pella v. Adams,* No. 85–098–ECR (D.Nev. March 22, 1985) (document # 6).

2. The facts are taken from the parties' briefs supporting and opposing this motion for summary judgment.

the sample for the presence of marijuana. The test was positive. *Id.*

The disciplinary committee found Pella guilty of G–16, possession of unauthorized currency, and based on its finding that Pella had ingested marijuana, MJ–37, also found Pella guilty of an attempt or conspiracy to commit a major violation. The evidence relied upon by the committee on the MJ–37 charge was the reporting employee's written report noting his discovery of seeds and leaves in Pella's area and the positive urinalysis report. Pella was sentenced to fifteen days of disciplinary detention and given credit for two days previously served. The committee also referred the case to the Nevada Board of Parole Commissioners for consideration of loss of statutory time. *Id.* at 4.

On December 5, 1984, the Board of Parole Commissioners held a statutory time hearing. Defendants Armstrong and Snyder, Board of Parole Commissioners, found Pella guilty of MJ–37, attempt or conspiracy to commit a major violation and revoked one hundred days of Pella's statutory good time. *Id.* at 4. The Board of Commissioners also relied upon Sgt. Gentry's written report and the positive urinalysis in revoking Pella's good time credit.

STANDARD OF REVIEW

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Franklin v. Murphy,* 745 F.2d 1221, 1235 (9th Cir.1984). The evidence must be viewed in the light most favorable to the non-moving party. *Id.* at 1235. Although the initial burden of showing no issue of material fact is on the proponent, *Int'l Union of Bricklayers v. Martin Jaska, Inc.,* 752 F.2d 1401, 1405 (9th Cir.1985), the opponent must present some significant probative evidence tending to support his complaint. *Compton v. Ide,* 732 F.2d 1429, 1434 (9th Cir.1984). He may not rely solely on the allegation in his pleadings. *Franklin v. Murphy,* 745 F.2d at 1235.

DUE PROCESS

Pella alleges that his due process rights were violated at the disciplinary hearing when the disciplinary committee considered the results of the urinalysis. He attacks the results of the urinalysis on two grounds: (1) that the technician who tested the sample was incompetent to do so; and (2) that the test used by the prison is unreliable. In support of their motion for summary judgment, defendants argue that Pella's complaint is in essence a complaint against the sufficiency of the evidence as relied upon to find him guilty. Pella does not dispute this characterization, but insists that the urinalysis result is not competent evidence.

 Before a prison inmate may be deprived of a protected liberty interest in good time credits, the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell,* 418 U.S. 539, 563–567, 94 S.Ct. 2963, 2978–2980, 41 L.Ed.2d 935 (1974). Due process also requires that some evidence must exist to support the decision by the prison disciplinary board to revoke good time credits. *Superintendent, Mass. Correctional Institution v. Hill,* — U.S. ——, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985).

 Pella's first attack is on the technician who performed the urinalysis test. Pella's complaint admits that cross-examination was conducted to demonstrate that the technician who performed the urinalysis test was not competent. This Court may not second-guess the disciplinary board's factual findings. *Hill,* 105 S.Ct. at 2774. It is not this Court's function to assess the credibility of witnesses or to weigh the evidence. *Id.* Thus, we find that the competence of the technician of

the test is not a proper question for this Court.[3]

That leaves only the question of the reliability of the test itself. There is no question that even though it was not the sole evidence before the disciplinary board, Pella's positive test is strong evidence supporting the board's conclusion. If there were no doubt about the validity of this test, this Court would conclude that the evidence before the disciplinary board was sufficient to meet the requirements of the Due Process Clause. However, without the urinalysis test, the only other evidence supporting the disciplinary board's decision is the seeds and leafy green substance found in Pella's living area.

■ Because the evidence against Pella is scarce without the positive EMIT test, the Court finds that inquiry into its reliability and accuracy is appropriate. Several courts have examined the results of the EMIT test, with varying conclusions. *See e.g., Higgs v. Wilson,* 616 F.Supp. 226 (W.D.Ky.1985) (granted a preliminary injunction against the prison from disciplining an inmate on the sole basis of an unconfirmed positive EMIT test); *Wykoff v. Resig,* 613 F.Supp. 1504 (N.D.Ind.1985) (in order to meet due process requirements, ordered all positive EMIT results in the future should be confirmed by a second EMIT test or its equivalent); *Peranzo v. Coughlin,* 608 F.Supp. 1504 (S.D.N.Y.1985) (double EMIT testing held sufficient to satisfy due process); *Storms v. Coughlin,* 600 F.Supp. 1214 (S.D.N.Y.1984) (noted that substantial question was raised as to whether EMIT tests were reliable); *Jensen v. Lick,* 589 F.Supp. 35 (D.N.D.1984) (prison officials could impose sanctions on prisoners based upon the unconfirmed EMIT test); *Kane v. Fair,* 33 Cr.L. 2492 (Mass. Superior Court, August 5, 1983) (the state failed to show that knowledgeable scientists would accept an unsubstantiated EMIT-positive result as evidence of drug

use and required the positive result be accompanied by an alternative method of testing); *Smith v. State,* 250 Ga. 438, 298 S.E.2d 482 (1983) (the EMIT test is sufficiently reliable to stand as the only evidence in a parole revocation hearing). This Court finds that a substantial issue of material fact exists which precludes granting summary judgment as to Pella's claim that his due process rights were violated.

## UNREASONABLE SEARCH AND SEIZURE

In support of his claim that defendants violated his right to be free from illegal search and seizure, Pella alleges that no probable cause showing was made prior to subjecting him to a urinalysis. Pella asserts that a finding of probable cause is required by the Nevada Department of Prisons. In their motion for summary judgment, defendants argue that not only is there no requirement that probable cause be shown, but, that in any event, probable cause existed to order Pella's urinalysis. In opposition, Pella asserts that defendant Adams admitted in his Request for Admission No. 1 that NNCC has an "unwritten policy" which requires the presence of reasonable cause prior to requiring an inmate to submit to a urine test.

Pella's claim of unreasonable search and seizure arises from the Fourth Amendment. The Fourth Amendment applies to the states through the Fourteenth Amendment. *Wolf v. Colorado,* 338 U.S. 25, 27–28, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782 (1949).

■ The Fourth Amendment is intended to protect the privacy of individuals from invasion by unreasonable searches of the person and those places and thing wherein the individual has a reasonable expectation of privacy. *Terry v. Ohio,* 392 U.S. 1, 9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889 (1968). Only "unreasonable" searches are prohibited. *Carroll v. United States,* 267 U.S. 132, 147, 45 S.Ct. 280, 283, 69 L.Ed. 543

---

**3.** Pella argues in his opposition to the motion for summary judgment that he "... is prepared to produce evidence to support his contention that the individuals employed by the Nevada Department of Prisons to conduct such a test

are not sufficiently qualified...." Opposition at 6. *The Court fails to see the relevance of the qualifications of any individual other than C/O Strande.* Pella has challenged Strande's qualifications at his hearing.

(1925). However, "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979).

As neither party disputes, Pella properly asserts a Fourth Amendment interest in the prison taking his urine sample. *See McDonell v. Hunter,* 612 F.Supp. 1122, 1127 (S.D.Iowa 1985); *Allen v. City of Marietta,* 601 F.Supp. 482, 488–489 (N.D. Ga.1985); *Storms v. Coughlin,* 600 F.Supp. 1214, 1217–18 (S.D.N.Y.1984). Thus, the question for this Court is whether the taking of the urine sample constituted an unreasonable search.

Pella failed to address this issue directly in his opposition to the motion for summary judgment. Apparently, he argues that because defendants have an unwritten policy of a probable cause requirement prior to such demand for urine that failure to demonstrate probable cause elevates the demand for urine to an unreasonable search within the meaning of the Fourth Amendment. Pella makes no other assertion as to any unreasonable aspect of the urine sample. The Court finds this argument without merit because probable cause existed.

■ Although inmates do not leave all of their constitutional rights at the gates of the prison, "[t]he fact of confinement as well as the legitimate goals and policies of the penal institution limits these retained constitutional rights." *Bell v. Wolfish,* 441 U.S. 520, 546, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979). The Bell court permitted body cavity searches to be conducted without probable cause or reasonable suspicion. *Id.* Thus, probable cause is not required for a urinalysis.

■ Assuming arguendo, however, that Nevada policy requires probable cause in this case, Pella was ordered to produce a urine sample after a prison official discovered a green leafy substance and seeds in Pella's living area. The discovery was sufficient to establish probable cause for the urinalysis.

There are no other allegations that the demanded urinalysis was conducted in an unreasonable manner. Accordingly, the Court finds that the motion for summary judgment as to Pella's Fourth Amendment claims should be granted.

ABSOLUTE IMMUNITY

Defendants Armstrong and Snyder argue that they are absolutely immune as Board of Parole Commissioners. They argue that any decisions which they rendered were done so in a quasi-judicial capacity and as such they are immune. Pella does not apparently oppose defendants' contention that parole officials are generally entitled to absolute immunity for actions taken in reviewing and processing parole applications. *See Anderson v. Boyd,* 714 F.2d 906 (9th Cir.1983). Pella argues that because defendants are being sued for action in revoking good time credits rather than parole, they are not absolutely immune. Pella does not offer any authority to support the distinction between parole and good time credit review and this Court finds no merit to this argument.

■ A parole official is entitled to immunity from damages when considering parole applications. *Id.* at 909. The revocation of good time credits is similar to the granting or denying of parole, the imposition of parole condition, and execution of parole revocation procedures. Defendants Armstrong and Snyder are, therefore, immune from money damages for the actions taken in their role in revoking Pella's good time credits.

PENDENT STATE CLAIM

Defendants argue that Pella's state claim of alleged intentional infliction of emotional distress should be dismissed. Because this Court has not yet ruled on Pella's due process claims, we will reserve our determination of whether to dismiss the pendent state claim until after the due process claims have been properly determined.

INJUNCTIVE RELIEF—GOOD TIME CREDITS

Defendants also inexplicably moved for summary judgment of Pella's claims for injunctive relief of restoring good time credits. This Court, by order dated March 22, 1985, adopted the Magistrate's recom-

mendation and dismissed all claims seeking injunctive relief of restoration of statutory good time credit (document # 6). Thus, Pella's claim for restoration of good time credits has already been dismissed.

CONCLUSION

IT IS, THEREFORE, HEREBY ORDERED that defendants' motion for summary judgment is GRANTED as to Pella's Fourth Amendment claims.

IT IS FURTHER ORDERED that defendants' motion for summary judgment is GRANTED as to Pella's claims for money damages against defendants Armstrong and Snyder.

IT IS FURTHER ORDERED that defendants' motion for summary judgment is DENIED as to Pella's due process claims and his pendent state claim.