**Richard W. SPENCE, et al., Appellants,**

v.

**Hal FARRIER, et al., Appellees.**

**No. 85–1902.**

United States Court of Appeals, Eighth Circuit.

Submitted June 9, 1986.

Decided Dec. 24, 1986.

Lay, Chief Judge, filed a dissenting opinion.

STROM, District Judge.

The appellants, prisoners at the Iowa State Penitentiary, appeal from the order of the United States District Court for the Southern District of Iowa granting summary judgment against them. They allege they were deprived of constitutional rights arising under the Fourth and Fourteenth Amendments by virtue of drug testing policies and procedures at the Penitentiary.

## I. BACKGROUND

Appellants filed this action pursuant to 42 U.S.C. § 1983. They sought declaratory and injunctive relief for deprivation, under color of state law, of their Fourth Amendment right to be free from an unreasonable search and seizure and their Fourteenth Amendment right to due process of law. They contend their rights were violated as a result of urinalysis testing for drugs at the Penitentiary.

Iowa State Penitentiary conducts urinalysis testing of inmates to detect and deter the use of contraband drugs. In addition to testing those suspected of using drugs, the Penitentiary tests approximately ten per cent (10%) of the prison population on a monthly basis. Inmates tested are chosen by unit managers who randomly pull cards from an index card file. There are no allegations that the selection of appellants herein was not random.

The Penitentiary uses the EMIT (Enzyme Multiple Immunoassay Test) for urinalysis testing. Any positive results are retested on the EMIT. Disciplinary reports are written on inmates who have positive EMIT results. Inmates are allowed to present defenses at a disciplinary board hearing, although they are not allowed to call expert witnesses or to have a confirmatory test by alternate methodology. Those found guilty of ingesting drugs can be subjected to sanctions, including loss of good time, transfer to a maximum security unit (ad-

Paul Papak and Jeffrey Bouslos, Iowa City, Iowa, for appellants.

John M. Parmeter, Asst. Atty. Gen., Des Moines, Iowa, for appellees.

Before LAY, Chief Judge, ARNOLD, Circuit Judge, and STROM,* District Judge.

* The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska, sitting by designation.

ministrative segregation), and disciplinary detention (solitary confinement).

Appellants, who had been disciplined as a result of EMIT tests, challenged the constitutionality of the procedures. The district court granted defendants' motion for summary judgment, holding: (1) plaintiff's Fourth Amendment expectation of privacy in body fluids was not offended by the random selection process and that the method of generating random samples was not so susceptible to abuse as to be inherently unreasonable; (2) defendants' use of the results of EMIT without independent confirmatory tests did not violate due process as long as the positive test results provide some evidence to support the disciplinary board's decision; and (3) defendants were not required to run corroborative tests or to allow plaintiffs to call testing personnel or expert witnesses to challenge EMIT results and that failure to do so did not create an irrebuttable presumption in violation of due process. The district court did not address plaintiffs' contentions of insufficient notice for the reason that the issue was not raised in the pleadings. This appeal followed.

## II. DISCUSSION

### A. Fourth Amendment

■ Appellants first assert that the district court erred in finding that the random testing procedures at issue are reasonable within the meaning of the Fourth Amendment. A urinalysis constitutes a search or seizure for purposes of the Fourth Amendment. *See, McDonell v. Hunter,* 746 F.2d 785 (8th Cir.1984), *on remand,* 612 F.Supp. 1122, 1127 (S.D.Iowa 1986). *See also, Schmerber v. California,* 384 U.S. 757, 767–68, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908 (1966); *United States v. Williams,* 787 F.2d 1182, 1185 n. 5 (7th Cir.1986); and *Storms v. Coughlin,* 600 F.Supp. 1214, 1217–18 (S.D.N.Y.1984). Therefore, the searches must be conducted in a reasonable manner. *Schmerber v. California,* 384 U.S. at 771–72, 86 S.Ct. at 1836. However, prison administrators are accorded "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979). A reasonableness analysis involves "[b]alancing the significant and legitimate security interests of the institution against the privacy interests of the inmates...." *Id.* at 560, 99 S.Ct. at 1885.

■ With that balancing test in mind, we hold that the procedure at issue is reasonable. The unauthorized use of narcotics is a problem that plagues virtually every penal and detention center in the country. *Block v. Rutherford,* 468 U.S. 576, 588–89, 104 S.Ct. 3227, 3234, 82 L.Ed.2d 438 (1984). Because of the prison's security needs, the prisoner's expectation of privacy in his or her body is diminished. *Storms v. Coughlin,* 600 F.Supp. at 1224. The prisoners' limited expectation of privacy does not forbid random urine collection and analysis. *Id.* at 1223. However, it is important to insure that when the state chooses to employ such intrusive random searches as these, the procedures for selecting the inmates to be tested are truly random. *Id.* There is no evidence herein that unit managers are aware of the names of the prisoners chosen, nor are there any allegations that appellants were not selected purely at random. Under the circumstances, we are unable to say that the procedure used unnecessarily exposes prisoners to the risk of harassment or that the practice lends itself to abuse. *But cf., Storms* at 1223 (procedure whereby watch commander is aware of the name of the prisoner he selects to be tested lends itself to abuse).

### B. Due Process

Appellants next assert that the district court erred in finding that the testing procedures satisfied the requirements of due process. In that regard, appellants argue (1) that refusal to allow inmates to have confirmatory tests performed violates due process in that it creates an irrebuttable presumption of guilt and (2) unconfirmed

EMIT tests are inadmissible absent a showing that the test has been accepted in the scientific community.

■ The requirements of due process are flexible and depend on a balancing of interests affected by the relevant government action. *Superintendent, Massachusetts Correctional Institution v. Hill,* 53 U.S.L.W. 4778, 4781 (1985). This interest must be accommodated in the distinctive setting of a prison, where disciplinary proceedings "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and have been lawfully incarcerated for doing so." *Id. (quoting Wolff v. McDonnell,* 418 U.S. 539, 561, 94 S.Ct. 2963, 2977, 41 L.Ed.2d 935 (1974)). "Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances." *Id.* The requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board. *Id.; Rushing v. State,* 382 N.W.2d 141, 145 (Iowa 1986).

■ The EMIT test results obviously provide some evidence of drug use. EMIT tests have been found sufficiently reliable to meet the requirements of the due process clause. *See, e.g., Harmon v. Auger,* 768 F.2d 270, (8th Cir.1985) (EMIT test results are ninety-five per cent (95%) accurate and form a sufficient basis for disciplinary action); *Wycoff v. Resig,* 613 F.Supp. 1504 (N.D.Ind.1985) (a positive EMIT test confirmed by a second EMIT test or its equivalent satisfies due process); *Jensen v. Lick,* 589 F.Supp. 35 (D.N.D.1984) (prison officials could impose sanctions on prisoners based upon an unconfirmed EMIT test); *Peranzo v. Coughlin,* 608 F.Supp. 1504 (S.D.N.Y.1984) (double EMIT testing held sufficient to satisfy due process); *Hoeppner v. State,* 379 N.W.2d 23, 25 (Iowa App.1985) ("the limited rights set forth in *Wolff [v. McDonnell]* do not entitle a prisoner to an independent sample of evidence used in a disciplinary proceeding"); and *Smith v. State,* 250 Ga. 438, 298 S.E.2d 482

(1983) (the EMIT test is sufficiently reliable to stand as the only evidence in a parole revocation hearing). *But see, Higgs v. Wilson,* 616 F.Supp. 226 (W.D.Ky.1985); and *Kane v. Fair,* 33 Cr.L. 2492 (Mass.Super 1983). We hold that the EMIT test, as used at Iowa State Penitentiary with a confirmatory second test, contains sufficient indicia of reliability to provide some evidence of drug use.

Appellants also argue that use of the EMIT test as evidence at a disciplinary board hearing creates an irrebuttable presumption of guilt. Such is not the case because prisoners are allowed to present defenses. Inmates are provided an opportunity to rebut proof of the urinalysis. They can challenge the accuracy of the test and raise the defense of passive inhalation. *Harmon v. Auger,* 768 F.2d at 276–77. An inmate's rights to call witnesses and to present documentary evidence are limited to situations when "permitting him to do so will not be unduly hazardous to institutional safety and correctional goals." *Wolff v. McDonnell,* 418 U.S. at 566, 94 S.Ct. at 2979. Prison officials must have the necessary discretion to keep the hearing within reasonable limits. *Id.* "We should not be too ready to exercise oversight and put aside the judgment of prison administrators." *Id.* To allow prisoners to present expert testimony in regard to EMIT reliability would seriously interfere with the institutional goal of drug deterrence and prompt resolution of drug related infractions. The evidence herein shows that inmate's defenses are given due consideration and that charges are sometimes dismissed on grounds of irregularities in testing.

■ Although it is conceivable that an inmate could be unjustly disciplined as a result of EMIT tests, the margin of error is insignificant in light of institutional goals. States need not implement all possible procedural safeguards against erroneous deprivation of liberty when utilizing results of scientific testing devices in accusatory proceedings. *See, Wycoff v. Resig,* 613 F.Supp. at 1311.

Appellants' assertion that the results of the EMIT test are inadmissible because of lack of scientific support is without merit. As noted, the EMIT test has been shown to be widely accepted. *See discussion, supra.* Additionally, a prison disciplinary hearing is intended to be informal and expeditious. *See, Wolff,* 418 U.S. at 569–70, 94 S.Ct. at 2981. Evidentiary standards are therefore relaxed; inmates have no right to confrontation and cross-examination or to counsel. *Id.* It follows that the admission of positive EMIT results is not violative of due process.

### C. Notice

With regard to appellants' assertion that notice is insufficient, that issue was not raised in the pleadings and will not be addressed. The matter is now moot for the reason that Iowa State Penitentiary presently follows the notice requirements mandated in *Harmon v. Auger* at 277.

In view of the foregoing, the court finds the order of the district court should be and is affirmed.

LAY, Chief Judge, dissenting.

I respectfully dissent.

I fully recognize that the Supreme Court has held that prisoners have no legitimate expectation of privacy in their prison cells, *Hudson v. Palmer,* 468 U.S. 517, 530, 104 S.Ct. 3194, 3202, 82 L.Ed.2d 393 (1984), and that it has held that random searches of cells are an effective instrument against the proliferation of weapons, illicit drugs, and other contraband in the prison setting. *Id.* at 528, 104 S.Ct. at 3201. In *Block v. Rutherford,* 468 U.S. 576, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984), the Court took judicial notice "that the unauthorized use of narcotics is a problem that plagues virtually every penal and detention center in the country." *Id.* at 588–89, 104 S.Ct. at 3234. Moreover, in *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Court upheld the practice of body cavity searches of pretrial detainees performed by prison employees after contact visits with persons outside the institution. However, in *Bell* the Court took care to note that in that case inmate attempts to smuggle "money, drugs, weapons, and other contraband" into the prison facility "by concealing them in body cavities are documented in this record." *Id.* at 559, 99 S.Ct. at 1884. In upholding these searches the Court stated that in each case "[t]he test of reasonableness under the Fourth Amendment * * requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Id.* The Court continued:

> We do not underestimate the degree to which these searches may invade the personal privacy of inmates. Nor do we doubt, as the District Court noted, that on occasion a security guard may conduct the search in an abusive fashion. * * * Such abuse cannot be condoned. The searches must be conducted in a reasonable manner.

*Id.* at 560, 99 S.Ct. at 1885 (citations omitted).

There should be little doubt that randomly conducted urinalysis for the purposes of detecting illicit drug use by an inmate is a search that implicates the Fourth Amendment. Although prisoners are not completely divested of their constitutional rights while incarcerated, the unique constraints of the prison environment require that the inmates' rights be curtailed in a reasonable manner. We acknowledge that in balancing the rights of the inmate against the state's institutional interests, due deference must be given to prison administrators' judgments. Unless substantial evidence exists in the record to indicate that the prison officials have exaggerated their response to considerations of institutional security, courts should ordinarily defer to the expert judgments of corrections officials in such matters. *Pell v. Procunier,* 417 U.S. 817, 827, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495 (1974). There is nothing in the present record to show that prisoners in the Iowa correctional facilities must be searched on a random basis, thus subjecting prisoners to possible harassment and abuse, rather than under a reasonable sus-

picion standard (which is, of course, less than probable cause). The record is devoid of any facts from which the administrators could conclude that random searches of all prisoners are necessary to maintain prison discipline. Under these circumstances, the procedures here are an exaggerated response to the circumstances by the prison administration. If the prison authorities can show that security problems can be traced to the use of the reasonable suspicion standard, then the competing Fourth Amendment interests may be reevaluated and properly balanced to remedy those demonstrated problems. Here, however, there is no evidence that the state has shown any facts at all that indicate a need to conduct at-random searches.

No one is in favor of the consequences which may flow from illegal drug abuse, whether in the prison context or elsewhere. However, the majority's analysis relies on assumptions and generalizations, rather than on demonstrated facts, in affirming the district court's determination that on balance the Iowa State Penitentiary's asserted need to protect institutional security, by conducting random searches of inmates' urine, outweighs the individual inmate's privacy interests under the Fourth Amendment. In its opinion granting summary judgment to the state penitentiary, the district court made no findings of fact that the prison officials had demonstrated actual past or present drug abuse by inmates which in fact threatened the security of the institution. Moreover, a review of the record yields little, if any, factual basis to support such findings. In its brief to this court, no facts were recited by the state penitentiary to support the institution's asserted need to detect and deter the use of contraband drugs by inmates through such intrusive, random means.

I recognize that it is likely that illicit drug use by prisoners has the potential to create serious security problems in the prison setting. However, merely alleging the probability that drug abuse exists or that security problems may potentially arise from such abuse is an insufficient foundation on which to base any judicial action, especially in a case such as this which determines the scope of Fourth Amendment rights for a significant number of people. As an appellate court, we should demand from litigants and rely ourselves on facts, not dicta, even dicta drawn from Supreme Court opinions, especially when making judicial determinations with constitutional implications.