**Fred T. HOLM, III, Plaintiff,**

v.

**Terrance HAINES and James Resop, Defendants.**

**No. 89–C–1092–C.**

United States District Court,
W.D. Wisconsin.

April 5, 1990.

Fred T. Holm, III, pro se.

Jennifer Sloan Lattis, Asst. Atty. Gen., Madison, Wis., for defendants.

## ORDER

CRABB, Chief Judge.

Plaintiff, an inmate at the Waupun Correctional Institution in Waupun, Wisconsin, has moved for reconsideration of the January 25, 1990 order in which I denied him leave to proceed *in forma pauperis* with respect to certain claims raised in his proposed complaint. He seeks also to proceed *in forma pauperis* on an amended complaint.

In his original proposed complaint, plaintiff made a number of allegations and named four proposed defendants. His allegations concerned primarily two disciplinary actions taken against him, one while he was an inmate at Kettle Moraine Correctional Institution in 1984 and another while he was at Camp McNaughton in 1985. In the January 25 order I discussed the allega-

tions in detail and then considered whether there was any arguable basis in law or fact for finding that the allegations stated actionable claims against any of the proposed defendants. *Neitzke v. Williams*, —— U.S. ——, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). I concluded that the complaint could be read as stating only one claim for which there was arguable support in law or fact: plaintiff's contention that defendants Haines and Resop had not provided him with a statement of reasons and an opportunity to respond within a reasonable time after he was placed in temporary lockup at the McNaughton prison camp on August 6, 1985. (Whether that conclusion was correct is a question to be discussed later in this opinion.) I granted plaintiff leave to proceed *in forma pauperis* only on the temporary lockup claim and only against defendants Haines and Resop. I denied him leave to proceed *in forma pauperis* on all of his remaining claims and with respect to the remaining two defendants and dismissed his complaint with prejudice as to those claims.

Several weeks later, I received an unpublished order in another case involving an unrepresented indigent litigant in which there was a suggestion that district courts act in violation of *Dixon v. Pitchford*, 843 F.2d 268 (7th Cir.1988), if, at the outset of litigation, they do not grant or deny leave to proceed *in forma pauperis* on an indigent litigant's entire complaint. This was the first indication I had seen that *Dixon* was intended to apply to anything other than the granting of leave to proceed *in forma pauperis* on *appeal*.

I continue to think it doubtful that *Dixon* does apply at the outset of litigation. First, the only issue raised in *Dixon* was the treatment of cases on appeal. The court of appeals had no occasion to consider how its holding might affect the granting of leave to proceed *in forma pauperis* at the beginning of a law suit. Second, requiring district courts to grant or deny leave on the entire proposed complaint would be a major change. If such a change were intended, it is likely the court of appeals would have made it explicit that it was overruling previous decisions in

which it had held that separate consideration of leave to proceed *in forma pauperis* could be given to each claim. *See, e.g., Jones v. Morris*, 777 F.2d 1277, 1279 (7th Cir.1985):

> Congress has chosen to strike the balance between [the need to curb the abuses necessarily associated with *in forma pauperis* litigation and the concern for ensuring indigent litigants meaningful access to the federal courts] by permitting the district court to dismiss with prejudice *those claims* which are frivolous or malicious. In this circuit, the district court conducts this inquiry even before the defendants are served. [Emphasis added.]

*See also Smith–Bey v. Hospital Administrator*, 841 F.2d 751 (7th Cir.1988), (approving denial of leave to proceed *in forma pauperis* against some of the defendants and analyzing separately the two claims raised in the complaint); *Williams v. Faulkner*, 837 F.2d 304, 308 (7th Cir.1988), *aff'd sub nom. Neitzke v. Williams*, —— U.S. ——, 109 S.Ct. 1827, 104 L.Ed.2d 338 (reversing district court's denial of leave to proceed *in forma pauperis* and dismissal of entire complaint, holding that leave to proceed should have been granted as to two of the defendants and one of the two claims); *Benjamin v. United States*, 833 F.2d 669 (7th Cir.1987) (district court granted petitioner leave to proceed *in forma pauperis* against one of two defendants).

Whether *Dixon* was or was not intended to apply to the district court's initial consideration of *pro se* litigation, it is apparent there remains some confusion about the handling of this litigation.

Years ago, the district courts in this circuit based their decisions to grant or deny leave to proceed *in forma pauperis* solely on the sufficiency of the financial affidavit accompanying the proposed complaint. If a petitioner was found to be indigent, the district court would grant leave to proceed *in forma pauperis* and then go on to examine the proposed complaint to determine whether it was frivolous or malicious. If the finding was that the complaint was frivolous, the court would dismiss it imme-

diately, pursuant to 28 U.S.C. § 1915(d). *United States ex rel. Morris v. Radio Station WENR*, 209 F.2d 105 (7th Cir.1953). In a 1974 decision, *Nichols v. Schubert*, 499 F.2d 946 (7th Cir.1974), the court of appeals held that district courts could not dismiss an indigent's complaint *sua sponte* until summons had been issued and served.

The *Nichols* decision created a procedural quagmire that became apparent immediately. In 1975, the court decided *Wartman v. Branch 7, Civil Division, County Court, Milwaukee County*, 510 F.2d 130 (7th Cir.1975), stating

> We note that some difficulties may have resulted from the failure of *Nichols* to discuss *United States ex rel. Morris v. Radio Station WENR*, 209 F.2d 105 (7th Cir.1953). *Radio Station WENR* held that in determining whether to allow a complaint to be filed in forma pauperis under 28 U.S.C. § 1915(a), a district court should not consider the merits of the claim, but should grant the motion to proceed in forma pauperis if the affidavit of indigency is sufficient. We went on to hold that the question of whether the complaint presented a meritorious claim could then be examined and the action dismissed pursuant to 28 U.S.C. § 1915(d) if found to be frivolous or malicious. The problem is that under the recent decision in *Nichols* the dismissal of a complaint under such circumstances is prevented until summons has issued in accordance with Fed.R.Civ.P. 4(a). The result of these two decisions is that a district judge must allow an indigent plaintiff the right to have summons issue at no cost no matter how meritless the cause of action may be. Such a result cannot have been intended by either decision. [Footnote omitted.]

*Id.* at 131–132. The court examined the statutory language of 28 U.S.C. § 1915(d) and its history and concluded that it was necessary to overrule the earlier holding in *Radio Station WENR*, 209 F.2d 105:

> We see no benefit to an indigent in allowing his action to be filed at the same time it is dismissed. Accordingly, in the future, a district judge should deny leave to proceed in forma pauperis if an action

is frivolous or malicious. If the motion is granted and the complaint filed, the matter cannot be dismissed until summons has issued. This practice will avoid any conflict between section 1915 and Fed.R.Civ.P. 4(a).

*Wartman*, 510 F.2d at 134. Two judges concurred, noting their belief that Fed.R. Civ.P. 4(a) did not require summons to issue for an obviously meritless complaint and that district judges had the power to dismiss such complaints before summons was issued.

The court of appeals did not explain how district courts should handle proposed complaints that included both frivolous and non-frivolous claims. I read *Wartman* as requiring summons to issue and service to be made on any defendant named in a claim that was not found to be frivolous. From this I concluded that district courts should analyze each claim of a proposed complaint, granting leave to proceed *in forma pauperis* only on the non-frivolous claims and denying leave on the others. I understood *Wartman* to say that the only way to avoid the necessity of service of a complaint on a proposed defendant was to deny leave to proceed *in forma pauperis* with respect to that defendant. In other words, it was necessary to have summons issue and service made on every defendant named in the proposed complaint unless leave to proceed *in forma pauperis* had been denied explicitly with respect to a particular defendant.

The decisions in *Jones v. Morris*, 777 F.2d 1277, and *Smith–Bey*, 841 F.2d at 757, confirmed my reading of *Wartman* that in granting leave to proceed *in forma pauperis* at the beginning of a law suit, separate consideration was to be given to individual claims in the proposed complaint. In these decisions, the court of appeals did not restrict the district courts as much as it had in *Wartman*, in which it had held that the only way to handle a proposed complaint was to grant or deny leave to proceed *in forma pauperis*. Instead, the court said, the district courts had the choice of either denying leave to proceed on individual claims or dismissing individual claims of a proposed complaint before

granting leave to proceed. As far as I can determine, however, the court did not overrule the requirement of *Wartman* that summons must issue once leave to proceed *in forma pauperis* is granted as to the entire complaint or any portion of it.

If the district courts are not bound to order summons to issue upon granting leave to proceed *in forma pauperis*, there would be merit in adopting the procedure that *Dixon* may require: that the district courts act on the entire complaint when deciding whether to grant leave to proceed *in forma pauperis* at the outset of litigation, making one decision whether to grant or deny leave and making a second decision whether to dismiss portions of the complaint on the court's own motion before the summons issues. There might be additional merit in confining the first decision to financial concerns only, as is the practice in other circuits, *see Neitzke v. Williams*, 109 S.Ct. at 1830, n. 1, and conducting a separate inquiry into frivolousness and maliciousness, with dismissal of those claims for which there is no arguable support in law or fact. This would bring the circuit full circle to the procedures in effect under *Radio Station WENR*, 209 F.2d 105, which worked well for many years.

My concern is that so long as *Wartman* requires district courts to cause summons to issue whenever leave to proceed *in forma pauperis* is granted, a prohibition on giving separate consideration to individual claims and individual defendants would result in the same kind of quagmire *Wartman* was intended to do away with. Without discretion to consider the arguable merit of independent claims, the courts might have to allow summons to issue and service to be made by the United States Marshal on defendants against whom there is no conceivable claim of any merit.

Whether this is a valid concern is a question that remains to be addressed. In the meantime, until there is additional clarification of the procedures for handling incoming *pro se* litigation, I intend to give separate consideration to each claim raised in a proposed complaint, granting leave to proceed *in forma pauperis* only as to those claims for which there is an arguable basis in law or fact.

I turn at last to plaintiff's motions for reconsideration and for leave to amend, first reconsidering the propriety of the order granting him leave to proceed *in forma pauperis* on the temporary lockup claim against defendants Haines and Resop.

In the time that has passed since plaintiff was granted leave to proceed *in forma pauperis* on the temporary lockup claim, the court of appeals has held definitively that the Wisconsin Administrative Code does not provide Wisconsin state prison inmates with a liberty interest in not being placed in that status. *Russ v. Young*, 895 F.2d 1149 (7th Cir.1990). Since plaintiff had no liberty interest in not being placed in temporary lockup, he has no arguable basis in law or fact for challenging the lack of procedural due process protections provided him in connection with that placement, and his claim must be dismissed.

I turn next to plaintiff's proposed amended complaint to determine whether there is any arguable basis in law or fact for any of the claims in that complaint. In doing so, I will reconsider the propriety of denying leave on the other claims raised in plaintiff's original proposed complaint and repeated in his proposed amended complaint.

Plaintiff's proposed amended complaint and his original complaint can be read as including the following allegations (omitting those that relate to plaintiff's placement in temporary lockup at Camp McNaughton in August 1985).

## ALLEGATIONS OF COMPLAINT

Plaintiff is an inmate of the Waupun Correctional Institution, Waupun, Wisconsin. At all relevant times defendant Walter Dickey was administrator of the Division of Corrections and was responsible for the development, implementation and promulgation of Security Internal Management Procedure # 24, which set out the reasons for the division's urine testing program. Defendant James Rowan was recreation director at all times pertinent to this

action; he was assigned as senior member of the disciplinary committee at Kettle Moraine Correctional Institution; and he was responsible for the outcome of the disciplinary hearing on October 22, 1984. Defendant Terrance Haines was superintendent of Camp McNaughton at all times pertinent to the suit. He wrote the conduct report at issue and authorized its categorization as a major infraction. Defendant James Resop was Associate Superintendent of Camp McNaughton and was responsible for supervising correctional officers and implementing all applicable laws and regulations at the camp.

On October 13, 1984, while plaintiff was confined at Kettle Moraine Correctional Institution, he was ordered to produce a urine sample for testing. He submitted a bottle of water instead, and was issued a conduct report for violation of Wis.Admin.Code § HSS 303.59. His conduct was described as follows: "On 10/13/84 a urine sample was taken from [plaintiff] and sent to Bayshore Lab. On 10//84 drug screen showed: THC Positive 400 NG/ML." No test results or laboratory reports were ever admitted into evidence at the hearing. Plaintiff was found guilty based on the unconfirmed result of one allegedly positive urine test and was placed in adjustment segregation for two days. His repeated requests for confirmatory tests were denied.

The urine sample taken from plaintiff on October 13, 1984, was for research purposes as part of a study to determine the nature and extent of drug use in Wisconsin prisons. No policy had been promulgated according to statute for the conduct of urine testing or for the use of the results of such testing in disciplinary hearings.

On August 14, 1985, while plaintiff was confined at Camp McNaughton, he was given a conduct report for violation of § HSS 303.59. His conduct was described as follows: "On the above date and time notice was received from Chemical Dependency Laboratories that the urine sample obtained from subject was positive for THC." Plaintiff made repeated requests for confirmatory tests, which were denied. At his

hearing plaintiff was found guilty. The reason given was, "Hearing officer relies on test results from Chemical Dependency Laboratories. 1. All previous results from numerous tests have been accurate and dependable." As a consequence of the guilty finding plaintiff lost five days' good time, received 90 days' program segregation, and was referred to the program review committee, which transferred him back to a maximum security institution. The disciplinary committee believed that plaintiff had been found guilty of the same offense twice before, although in fact plaintiff had been found guilty on only one prior occasion, at Kettle Moraine.

The laboratory report from Chemical Dependency Laboratories stated "Drug Screening by Enzyme Multiple Immunoassay Technique (EMIT) is primarily an exclusion test, results based only on this test are inappropriate for medico-legal purposes."

On June 18, 1985, Internal Management Notice 85–4 was distributed to all superintendents of the adult correctional institutions. It provided that a positive urinalysis test result on the first offense would subject an inmate only to a minor penalty to be imposed on a finding of guilt; that adjustment segregation or loss of good time or both could be imposed for a second offense; and that adjustment segregation, program segregation, loss of good time and referral to the program review committee could be imposed for a third offense. This internal notice was not promulgated pursuant to the authority vested in the Department of Health and Social Services by Wis.Stat. ch. 227. It was not promulgated properly until January 1987. Urine testing conducted before that time was intended to be for research purposes only and was to carry no punishment.

Plaintiff was not provided notice that urine testing was to be conducted. He was never provided a confirmatory test of either of the two allegedly positive urine tests, although he offered to pay for such tests himself.

## DISCUSSION

A fair reading of both of plaintiff's complaints suggests the following claims: 1) it was improper for defendants Resop, Rowan and Haines to base guilty findings on the Enzyme Multiple Immunoassay Technique; 2) defendant Dickey did not give plaintiff fair warning that drug testing would be used as the basis for disciplinary actions prior to the date of distribution of Internal Management Notice 85-4, which sets forth the penalties for positive urinalyses; 3) defendants Resop and Haines denied him due process in 1985 by imposing upon him a punishment that had not been properly promulgated and that, even if it had been properly promulgated, exceeded the penalty prescribed in the notice for a second violation of Wis.Admin.Code § HSS 303.59; 4) defendant Rowan denied him due process by refusing to permit him to see the lab report finding his urine sample positive for THC; and 5) all of the defendants conspired to deprive him of his constitutional rights.

### 1. Reliance upon EMIT test

■ Plaintiff's allegation in his original complaint was that defendant Resop deprived him of his constitutional rights and his rights under Wisconsin state regulations by denying his requests for permission to obtain an independent laboratory test to confirm the state's laboratory report finding plaintiff's urine sample positive for THC. In his motion for reconsideration, plaintiff makes clear that he is contending that an uncorroborated positive EMIT test is an insufficient basis upon which to impose disciplinary sanctions and that defendant Resop's reliance on the test violates plaintiff's right to due process.

The requirements of due process are satisfied if *some* evidence supports the disciplinary committee's decision to find an inmate guilty of a particular offense. *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985) (relevant question is whether there is "any" evidence in the record that could support the conclusion reached by the disci-

plinary board). *See also Culbert v. Young*, 834 F.2d 624, 629-31 (7th Cir.1987).

Whether an uncorroborated EMIT test provides *some* evidence of drug use is not clear. If it is the fact that the lab reported finding THC in plaintiff's sample of plain water, the reliability of the tests is questionable. However, uncorroborated EMIT tests have been found sufficiently reliable to meet the requirements of the due process clause by a number of courts. *See, e.g., Jensen v. Lick*, 589 F.Supp. 35 (D.N.D. 1984) and *Smith v. State*, 250 Ga. 438, 298 S.E.2d 482 (1983) (the EMIT test is sufficiently reliable to stand as the only evidence in a parole revocation hearing). Other courts have required corroboration. *See, e.g., Spence v. Farrier*, 807 F.2d 753 (8th Cir.1986); *Wykoff v. Resig*, 613 F.Supp. 1504 (N.D.Ind.1985); *Peranzo v. Coughlin*, 608 F.Supp. 1504 (S.D.N.Y. 1984). Because there is an arguable basis in fact or law that Wisconsin's EMIT tests are uncorroborated, and that the lack of corroboration renders the tests so unreliable as to form an insufficient basis for a finding of guilt, plaintiff's request for leave to proceed *in forma pauperis* against defendant Resop on this claim will be granted.

### 2. Promulgation of internal management notice 85-4 and excessive punishment

■ It is unlikely that plaintiff can state a claim upon which relief may be granted based on his allegations relating to the promulgation of the internal management notice, his punishment for a "third" offense instead of for a second offense, and the lack of notice prior to testing. An inmate is entitled to prior notice or "fair warning" of proscribed conduct before a severe sanction may be imposed. *Adams v. Gunnell*, 729 F.2d 362, 369 (5th Cir.1984); *Ruiz v. Estelle*, 503 F.Supp. 1265, 1352 (S.D.Tex. 1980), *aff'd in part and rev'd in part*, 679 F.2d 1115 (5th Cir.), *opinion amended in part and vacated in part*, 688 F.2d 266 (1982), *cert. denied*, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983). In this case, however, plaintiff is not contending that he did not know that he could be

punished for using intoxicants. The Wisconsin Administrative Code contained clear notice of that fact. Moreover, the Wisconsin Administrative Code gave notice to plaintiff that if he were found guilty of violating § HSS 303.59, he could be subject to a maximum penalty of eight days' adjustment segregation, 360 days' program segregation, and loss of twenty days of good time.

Even if defendants relied on an unpromulgated rule to fix plaintiff's penalty, the penalty imposed did not exceed the maximum terms set by the properly promulgated rules set out in the Wisconsin Administrative Code. Therefore, plaintiff cannot contend that he was deprived of notice of the potential penalties he faced for violation of § HSS 303.59.

As unlikely as it may be that plaintiff could prevail on these claims, however, I am not prepared to say that they are so lacking in arguable merit as to be legally frivolous. The law in this circuit is not fully developed with respect to the legality of drug testing in prisons. The court of appeals has not ruled on this issue or on related ones such as whether drug testing can be carried out legally in the absence of a properly promulgated policy, whether it can be carried out only as part of a truly random program or on the basis of probable cause or reasonable suspicion, what safeguards are required to verify the results, etc. Therefore, I will grant plaintiff leave to proceed *in forma pauperis* against all of the defendants on his claims relating to the promulgation and use of the internal management notice as well as the lack of notice provided him that the test results were not limited solely to research but could be used for disciplinary purposes.

### 3. Refusal to allow plaintiff to review lab report

■ There is no arguable basis in law or fact for this claim. Plaintiff does not allege that he did not receive notice of the violation that resulted in his disciplinary proceedings and an opportunity to be heard at the hearing. I have ruled in other cases that an inmate's right to due process is not violated when he or she does not receive a copy of the laboratory test results. *See, e.g., Robinson v. Brewer,* No. 86–C–163, 1988 WL 192735 (W.D.Wis. Jan. 29, 1988). Plaintiff's due process rights are limited to those enumerated in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and *Wolff* does not impose a requirement that prison officials produce physical evidence for the inmate's inspection at his disciplinary hearing.

### 4. Conspiracy

Plaintiff's allegations of conspiracy are merely conclusory. Although the claims of *pro se* litigants must be construed liberally, such litigants must allege something in the way of facts before their allegations of conspiracy may be deemed to state a claim. *Tarkowski v. Robert Bartlett Realty Co.,* 644 F.2d 1204, 1208 (7th Cir.1980). Nothing in plaintiff's amended complaint supports his allegation that there was a conscious conspiracy among the defendants to violate his constitutional rights.

### ORDER

IT IS ORDERED that

1) plaintiff's claim against defendants Haines and Resop challenging the lack of procedural due process protections in connection with his placement in temporary lockup is DISMISSED on the court's own motion;

2) plaintiff's request for leave to proceed *in forma pauperis* on his conspiracy claim against all of the defendants is DENIED;

3) plaintiff's request for leave to proceed *in forma pauperis* on his claim against defendant Rowan that he was not permitted to see his laboratory test results is DENIED;

4) in all other respects, plaintiff's request for leave to proceed *in forma pauperis* on his amended complaint is GRANTED.

IT IS FURTHER ORDERED that plaintiff's amended complaint shall be considered to have been served on defendants Resop and Haines and filed this date; these defendants may have ten (10) days from

the date of this order in which to serve a responsive pleading to the amended complaint.

Service of the amended complaint upon defendants Dickey and Rowan will be made promptly after plaintiff submits to the clerk of court two completed marshals service forms and two completed summonses for defendants Dickey and Rowan, plus one (1) additional summons including the names of both defendants. Enclosed with a copy of this order is a set of the necessary forms.

If plaintiff fails to submit the completed marshals service and summons forms before April 24, 1990, his complaint will be subject to dismissal as to defendants Dickey and Rowan for his failure to prosecute.

FINALLY, IT IS ORDERED that the standing order entered herein on March 12, 1990 is RESCINDED. A new standing order will be entered following defendants' filing of a responsive pleading to the amended complaint.