Charles E. Driver, an inmate at Limestone Correctional Facility, filed a petition for writ of habeas corpus on June 28, 1989. On August 3, 1989, the State filed a motion to dismiss the petition and on June 22, 1990, the circuit court granted the State's motion to dismiss. Driver appeals from the circuit court's denial of his habeas corpus petition.
On January 3, 1989, James L. Yarbrough, a corrections officer, performed an EMIT d.a.u. Cannabinoid Assay test on a urine sample supplied by Driver.[1] The specimen tested positive for cannabinoid 50 or marijuana. Driver then entered a substance abuse program.
On April 11, 1989, Yarbrough conducted a second routine EMIT urinalysis on Driver, and again the sample supplied by Driver tested positive for cannabinoid 50 or marijuana. Driver was then arrested on April 21, 1989 for the second violation of Rule 90, defined as consumption of, or under the influence of, alcohol, narcotics or other intoxicants.
At the disciplinary hearing on April 25, 1989, Driver testified that, although he did test positive for marijuana in January 1989, he stopped smoking marijuana in February 1989. Two other inmates testified in Driver's behalf that Driver no longer smoked marijuana and that on the night before the second EMIT test was administered, several other inmates in Driver's cell were smoking marijuana while Driver was sleeping, thereby making Driver test positive for marijuana based upon "passive inhalation."
The arresting officer testified at the hearing that Driver was arrested for a second violation of Rule 90 due to testing positive on a routine follow-up urinalysis conducted on April 11, 1989. A written report executed by Yarbrough was introduced at the hearing; the report stated that Yarbrough conducted two routine EMIT urinalyses on Driver on January 3, 1989, and April 11, 1989, and that on both occasions Driver's urine samples tested positive for cannabinoid 50 or marijuana.
Based upon the testimony and written report, Driver was found guilty violating Rule 90, was confined for 40 days in disciplinary segregation, and was deprived of 30 days of store privileges.
Driver contends on appeal that he was denied due process of law because 1) the EMIT urinalysis test results, he says, were not sufficiently reliable to satisfy the "some evidence" standard enunciated in Heidelburg v. State, 522 So.2d 337
(Ala.Cr.App. 1988); and 2) a copy of the alleged positive test result obtained in testing Driver on April 11, 1989, was not introduced before the hearing officer.
 I
To meet the minimum requirements of due process in a prison disciplinary proceeding, "the disciplinary board's decision *Page 677 
must neither be arbitrary nor capricious, and must be based upon some evidence." Heidelburg, supra, at 339 (emphasis in original) (citing Superintendent, Massachusetts CorrectionalInstitution, Walpole v. Hill, 472 U.S. 445, 105 S.Ct. 2768,86 L.Ed.2d 356 (1985)).
The reliability of the EMIT testing system as a basis for imposing disciplinary sanctions for inmate drug use has been addressed by several state and federal courts. The Eighth Circuit Court of Appeals, in the case of Spence v. Farrier,807 F.2d 753 (8th Cir. 1986), discussed the reliability of EMIT test results:
 "The EMIT test results obviously provide some evidence of drug use. EMIT tests have been found sufficiently reliable to meet the requirements of the due process clause. See, e.g., Harmon v. Auger, 768 F.2d 270 (8th Cir. 1985) (EMIT test results are ninety-five per cent (95%) accurate and form a sufficient basis for disciplinary action); Wycoff v. Resig, 613 F. Supp. 1504 (N.D.Ind. 1985) (a positive EMIT test confirmed by a second EMIT test or its equivalent satisfies due process); Jensen v. Lick, 589 F. Supp. 35 (D.N.D. 1984) (prison officials could impose sanctions on prisoners based upon an unconfirmed EMIT test); Peranzo v. Coughlin, 608 F. Supp. 1504 (S.D.N.Y. 1985) (double EMIT testing held sufficient to satisfy due process); Hoeppner v. State, 379 N.W.2d 23, 25
(Iowa App. 1985) ('the limited rights set forth in Wolff [v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)] do not entitle a prisoner to an independent sample of evidence used in a disciplinary proceeding'); and Smith v. State, 250 Ga. 438, 298 S.E.2d 482 (1983) (the EMIT test is sufficiently reliable to stand as the only evidence in a parole revocation hearing). But see, Higgs v. Wilson, 616 F. Supp. 226 (W.D.Ky. 1985); and Kane v. Fair, 33 Cr.L. 2492 (Mass.Super 1983). We hold that the EMIT test, as used at Iowa State Penitentiary with a confirmatory second test, contains sufficient indicia of reliability to provide some evidence of drug use."
807 F.2d at 756.
Most recently, the Fourth Circuit Court of Appeals inThompson v. Hall, [No. 88-6525, August 14, 1989] 883 F.2d 70 (4th Cir. 1989) (unpublished opinion; case listed in table), held that "the EMIT test, scientifically recognized as a valid medical procedure, constitutes some evidence to support the imposition of disciplinary sanctions."
In the case sub judice, the parties stipulated that the depositions of Dr. H. Horton McCurdy and Dr. Christopher S. Frings, experts in the field of EMIT testing, be made part of the record and be considered by the trial court in ruling on the State's motion to dismiss.
Dr. McCurdy, a research toxicologist with the Georgia Bureau of Investigation and an inspector for the National Institutes on Drug Abuse, testified that the Syva Corporation testing equipment used at the Limestone Correctional Facility is considered to be within a confidence limit of 95 percent, or sufficiently reliable. McCurdy further testified that although Limestone Correctional Facility does not do an independent confirmation test when a positive result is obtained from the EMIT test, Limestone Correctional Facility does perform a second EMIT test from the same urine sample to rule out an administrative error or testing of the wrong specimen.
Based upon the stipulated expert evidence as to the reliability of EMIT testing contained in the record and the general acceptance of the reliability of EMIT testing in other jurisdictions, we hold that the EMIT test contains sufficient indicia of reliability to provide some evidence of drug use at a disciplinary proceeding involving an inmate's alleged use of controlled substances.
 II
Driver contends that he was denied due process because a copy of his allegedly positive EMIT test result was not introduced before the hearing officer; he says *Page 678 
that the failure to introduce a copy was in violation ofWolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935
(1974).
Wolff does not mandate that evidence presented to a disciplinary committee be in the form of written statements.See Fulmer v. Kelley, No. 89-H-0008-N, 1989 WL 241717 (M.D.Ala., July 19, 1989) (Wolff does not require that a prisoner's urinalysis test results be submitted to the hearing officer).
The judgment of the circuit court is affirmed.
The foregoing opinion was prepared by the Honorable JAMES H. FAULKNER, a Retired Supreme Court Justice, and his opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.
[1] EMIT is an acronym which stands for "Enzyme Multiplied Immunoassay Technique." The test is manufactured by Syva Corporation in Palo Alto, California.