THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES WALKER, Defendant-Appellant.
Fifth District    No. 5—86—0573

Opinion filed December 21, 1987.

Daniel M. Kirwan and Rita K. Peterson, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

John R. Clemons, State's Attorney, of Murphysboro (Kenneth R. Boyle and Stephen E. Norris, both of State's Attorneys Appellate Prosecutor's Office, and Joseph J. Ciaccio, Sr., of Springfield, of counsel), for the People.

PRESIDING JUSTICE KARNS delivered the opinion of the court:

Defendant, James Walker, was charged on October 23, 1984, with two counts of forgery. He entered a negotiated plea of guilty to one count and was sentenced on April 4, 1985, to 30 months' probation, with the first six months to be served in jail; to pay $80 in restitution and a $350 fine; and to perform 150 hours of community service. On April 21, 1986, Walker's probation was revoked upon a showing that he had stolen some lottery tickets. He was again placed on probation, the first year of which was to be served on intensive probation, and fined an additional $150. On June 20, 1986, Walker was found to have violated his probation by breaking curfew and returned to probation under the original terms.

On July 28, 1986, the State filed a petition to revoke Walker's probation alleging that he had violated curfew and a urinalysis test indicated the presence of cannabis. A hearing was held on August 14,

1986, in the circuit court of Jackson County. His probation was revoked and he was sentenced to four years' imprisonment. Walker appeals.

At the August 14 hearing, the State introduced testimony of Mark Hutchings, a surveillance officer for the intensive probation supervision program. Officer Hutchings testified that he went to Walker's apartment on July 17, 1986, to collect a urine sample and took it to the Alcohol Counseling Services in Marion for testing. The sample was analyzed by a system called Emit Single Test Urinalysis (EMIT). Two tests were performed on Walker's urine sample and both tests yielded positive results, indicating the presence of cannabis.

Richard Rollins, also a surveillance officer for the intensive probation unit, testified that on July 14, 1986, he went to Walker's home at 8:05 p.m. for a curfew check. Under the intensive probation program, Walker's curfew began at 7 p.m. Officer Rollins did not see Walker's car, but did observe a black Ford Mustang. Rollins knocked on Walker's door for several minutes, but received no reply. Rollins further testified that around 8:35 p.m. on that same evening, he saw a car similar to Walker's and followed it to a local lounge. He observed a man emerge from the passenger side and identified the man as Walker. After documenting the incident, Officer Rollins returned to Walker's home around 8:42 p.m., where he found Walker and his car.

Walker testified that about 7:40 p.m. on the date in question he had just finished cleaning a black Mustang and had gone into the house to take a shower. Afterward he went to the bedroom and saw Rollins' car outside. He ran to the door in an effort to catch Rollins but was unsuccessful. Walker further testified that his wife had returned from doing laundry shortly after Rollins left, explaining the absence of Walker's car at his home.

On appeal, Walker argues that he was not proved guilty of violating the terms of his probation by a preponderance of the evidence because the urinalysis test was unreliable and he presented a credible explanation of his probation officer's inability to locate him at his home during curfew.

■■ The issue concerning the reliability of the EMIT test appears to be a matter of first impression in Illinois. Both parties have cited cases from other jurisdictions to support their respective positions. Walker cites several decisions which found EMIT tests that were unconfirmed by an alternative testing procedure inadmissible in disciplinary proceedings against State prisoners (*Kane v. Fair* (Mass. Super. Ct. 1983), 33 Crim. L. Rep. 2492) and not shown to be generally accepted as reliable by the scientific community (*Lahey v. Kelly* (1986),

510 N.Y.S.2d 187, 125 App. Div. 2d 923.) Walker also cites *Higgs v. Wilson* (W.D. Ky. 1985), 616 F. Supp. 226, holding prison inmates were entitled to a preliminary injunction enjoining corrections officials from taking disciplinary action against them based on a single unconfirmed EMIT test.

Other jurisdictions have accepted the EMIT test as sufficiently reliable where it was the only evidence in a prison disciplinary hearing (*Jensen v. Lick* (D.N.D. 1984), 589 F. Supp. 35) and in a parole revocation hearing (*Smith v. State* (1983), 250 Ga. 438, 298 S.E.2d 482). In *Jensen*, the court noted that a test of reliability performed by the Center for Disease Control in Atlanta, Georgia, found the EMIT system to be 97% to 99% reliable, and concluded that the test's "almost complete certainty" provided an adequate level of reliability even under the "beyond a reasonable doubt" standard. (*Jensen*, 589 F. Supp. at 38-39.) In *Peranzo v. Coughlin* (S.D.N.Y. 1985), 608 F. Supp. 1504, the court denied a request by State penitentiary inmates for a preliminary injunction to enjoin prison officials from taking disciplinary action against them based on unconfirmed EMIT test results. The court discussed the testimony of the parties' experts and the results of several studies, including the Center for Disease Control study and one by the Substance Abuse Services Testing and Research Laboratory which found the rate of error to be less than 3%. Several of the other studies indicated higher rates of error, but the record in *Peranzo* indicated that those studies involved single EMIT tests. In *Peranzo*, prison officials tested an inmate's urine sample twice and disciplinary action was taken only if both results were positive. It was on this basis which the court in *Higgs*, discussed earlier, distinguished *Peranzo*.

Based on the foregoing, we are persuaded that where the EMIT test procedure is performed twice, it is sufficiently reliable where it is the only evidence of drug use in a probation revocation proceeding.

■■ ■ Walker's contention that the State did not prove a curfew violation by a preponderance of the evidence is primarily an issue of witness credibility. The trial court is in the best position to weigh the testimony of witnesses and we will not substitute our judgment for the trial court's unless against the manifest weight of the evidence. (*People v. Salamon* (1984), 126 Ill. App. 3d 1066, 1070, 468 N.E.2d 168, 171.) The trial court's finding that Walker violated his curfew is reasonable and we do not find it against the manifest weight of the evidence.

■■ Defendant also argues that the trial court erred in sentencing him without first considering a presentence investigation report or al-

lowing him to present evidence in mitigation. Section 5—6—4(h) of the Uniform Code of Corrections provides that article 4 of the Code shall be followed in resentencing after revocation of probation. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—6—4(h).) Section 5—4—1(a) requires the court to "(2) consider any presentence reports; (3) consider evidence and information offered by the parties in aggravation and mitigation; (4) hear arguments as to sentencing alternatives; [and] (5) afford the defendant the opportunity to make a statement in his own behalf[.]" Ill. Rev. Stat. 1985, ch. 38, par. 1005—4—1(a).

In *People v. Harris* (1985), 105 Ill. 2d 290, 473 N.E.2d 1291, the supreme court held that upon revocation of probation, the trial court must consider a written presentence investigation report pursuant to section 5—3—1 of the Unified Code of Corrections prior to imposing sentence. For purposes of review, the court consolidated *Harris* with *People v. Coleman* (1983), 120 Ill. App. 3d 619, 458 N.E.2d 634, *aff'd* (1985), 105 Ill. 2d 290, 473 N.E.2d 1291, which also addressed the issue of a presentence investigation report in a probation revocation proceeding. In both cases, there had been no presentence report when the defendant was originally placed on probation because the requirement had been waived by the defendant, which was permissible under prior law. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—3—1.) The trial court in *Coleman* did consider an "update" of a presentence report, however, but the update did not comply with section 5—3—2(a) of the Code.

*Harris* is distinguishable from the present case because here the trial court did consider a written presentence investigation report when Walker was originally placed on probation, as required by section 5—3—1 of the Code. The record also indicates that the court considered an update of the presentence report when Walker's probation was revoked for stealing lottery tickets.

Quoting *People v. Youngbey* (1980), 82 Ill. 2d 556, 413 N.E.2d 416, the court in *Harris* stated " 'the purpose of the requirement of a presentence investigation report is to insure that the trial judge will have all the necessary information concerning the defendant before sentence is imposed.' " (*Harris*, 105 Ill. 2d at 299, 473 N.E.2d at 1295.) We believe that purpose has been fully satisfied in this case. An additional presentence report only three months after considering the update of Walker's original report would have been, as the trial court said, a waste of time and money. We hold that in a probation revocation proceeding, an additional presentence investigation report is not necessary where the trial court considered a presentence investigation report when the defendant was originally placed on probation, and

that report, or an update thereof, is relatively current and the defendant is given the opportunity to present any additional information.

For the foregoing reasons, the judgment of the circuit court of Jackson County is affirmed.

Affirmed.

WELCH and CALVO, JJ., concur.