**Anthony BOLIEU, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3-88-173-CR.**

Court of Appeals of Texas,
Austin.

Oct. 11, 1989.

Rehearing Denied Nov. 22, 1989.

Scott A. Young, Minton, Burton, Foster & Collins, Austin, for appellant.

Ronald Earle, Dist. Atty., Claire Dawson–Brown, Asst. Dist. Atty., Austin, for appellee.

Before SMITH *, JONES and ONION **, JJ.

---

* Before Earl W. Smith, Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't. Code Ann. § 74.003 (1988).

ONION, Justice (Retired).

This is an appeal from an order revoking probation.

Appellant was indicted on October 15, 1986, for the possession of a controlled substance, namely cocaine, in an amount of less than 28 grams. On March 18, 1987, appellant entered a plea of guilty before the court to the indictment and was placed on deferred adjudication for a period of six years subject to certain conditions. Tex. Code Cr.P.Ann. art. 42.12, § 3d.

On January 21, 1988, acting pursuant to the State's motion to proceed to adjudication of guilt, the court, after a hearing, found some conditions had been violated, and adjudged appellant guilty of the alleged offense, and assessed appellant's punishment at ten years' imprisonment. The imposition of the sentence was suspended and the court placed appellant on "regular" probation subject to certain probationary conditions.

Among the conditions imposed were

3. Avoid injurious or vicious habits (including the use of narcotic or habit-forming drugs and alcoholic beverages)....

16. ... Submit a urine specimen at the direction of probation officer, daily if ordered.

On May 17, 1988, the State filed a motion to revoke probation alleging several violations of probationary conditions including:

failed to avoid injurious or vicious habits in that on April 1, 1988, the defendant submitted a positive urine specimen for cocaine and on April 8, 1988, he submitted a positive urine specimen for marijuana;....

After a hearing on the motion to revoke probation, the court refused to revoke probation on the other alleged violations, but did on August 4, 1988, revoke probation solely on the basis of the above quoted allegation of the State's motion which was

---

** Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003 (1988).

**490**

set forth verbatim in the judgment revoking probation as the trial court's findings.

On appeal the appellant in a single point of error urges that the "trial court abused its discretion in revoking appellant's probation in that the evidence was insufficient to establish the grounds relied upon in the judgment revoking probation."

Appellant contends that there was no evidence at all offered to support the allegation that there was "a positive urine specimen for marijuana." The State agrees, and we find no basis for the revocation of probation on this ground. It is the major thrust of appellant's argument however that the evidence is also insufficient to show that the urine specimen of April 1, 1988, was "positive for cocaine" as alleged and to demonstrate a violation of the probationary condition involved.

Sandy Sugarek, laboratory supervisor for the Travis County Adult Probation Department, testified she performed an EMIT test on the urine specimen of April 1st using a Stasar III Spectrophotometer. The test indicated the presence of cocaine metabolites in an amount greater than that required to conclude that the test result was positive; and based on the test result, it was Sugarek's conclusion appellant had ingested cocaine at some point prior to the giving of the urine specimen. She reported that the EMIT test calibrator readings required an optical density change of at least 507 to indicate the presence of cocaine metabolites in an amount greater than 0.3 micrograms per milliliter and that the optical density readings for appellant's specimen were 558, a positive reading, but not a highly elevated positive reading.

Javier Flores, a forensic chemist for the Texas Department of Public Safety, tested the urine specimen of April 1st on May 10, 1988, using a "GCMS"—a gas chromatograph/mass spectrograph. The results of the test were inconclusive, not providing Flores with enough information to draw the conclusion as to whether or not the submitted specimen contained cocaine or its metabolites.

Flores acknowledged that the EMIT test was a screening process which is more practical if a large number of tests are being conducted but stated that the "GCMS" gives a specific definitive answer to whether a particular substance is actually present in any particular specimen; that the EMIT test may indicate the metabolites were there but "to get a confirmation you'd have to go through a separate test to confirm it."

Dr. Paul Lebourgeois, a pathologist, testified for the defense that he was familiar with both the EMIT test and the use of a GCMS; that the EMIT test was sufficiently accurate to be used as an initial screen but that it required an alternate test to confirm its findings and that the "GCMS" was the best alternative technique—the "Golden Rule" in the field of toxicology. He related that the industry standard in toxicology required that both tests positively indicate the presence of a certain substance before it is appropriate to conclude that the substance is in fact present in the specimen being analyzed.

Appellant, while noting *Isaacks v. State,* 646 S.W.2d 602 (Tex.App.1983, pet. ref'd), and *Wilson v. State,* 697 S.W.2d 83 (Tex. App.1985, pet. ref'd),[1] acknowledged, at least in oral argument, that there was no objection to the testimony as to the EMIT test or its results, and admitted that the testimony showed that the EMIT test had reached the level of general acceptance in the scientific community so long as its results were confirmed by an alternate, more

1. In *Isaacks,* 646 S.W.2d at 603, a probation revocation proceeding, the EMIT test was held not admissible as it was not shown by the evidence to have scientific acceptance. In addition the operator of the test system was not shown competent to testify as she knew nothing as to the scientific theory enabling the machine to detect a controlled substance in the urine sample. In *Wilson,* 697 S.W.2d at 84, the operator was qualified but there was no showing of a general acceptance in the scientific community of the EMIT test system. When asked, the operator said he could not speak for the entire scientific community, but that the Atlanta Center for Disease Control was satisfied with its accuracy. Both of these cases were discussed in *Jones v. State,* 716 S.W.2d 142, 146 (Tex.App. 1986, pet. ref'd) and *Lewis v. State,* 737 S.W.2d 857, 860 (Tex.App.1987, pet. ref'd).

specific testing procedure such as "GCMS." Appellant argues, however, that the EMIT test is only accepted as a screening procedure, and that its positive results as to the presence of cocaine metabolites, standing alone, are inconclusive; that the only slightly elevated positive results of the EMIT test in the instant case were an insufficient basis for the trial court to have revoked probation on the alleged violation.

The State argues that other jurisdictions have found the EMIT test reliable enough to satisfy due process in the context of probation revocation or prison discipline hearings. *See Harmon v. Auger*, 768 F.2d 270, 276 (8th Cir.1985); *Jensen v. Lick*, 589 F.Supp. 35, 38–39 (D.N.D.1984); *Smith v. State*, 250 Ga. 438, 298 S.E.2d 482 (1983) (use of EMIT test results as evidence in probation revocation hearing). *See also People v. Walker*, 164 Ill.App.3d 133, 115 Ill.Dec. 268, 517 N.E.2d 679 (1987) (use of double EMIT test results as sole evidence in probation revocation proceeding); *In re Johnston*, 109 Wash.2d 493, 745 P.2d 864 (1987) (use of EMIT test results as evidence in prison disciplinary hearing); *Spence v. Farrier*, 807 F.2d 753 (8th Cir. 1986) (use of double EMIT test results as evidence in prison disciplinary hearing); *Wykoff v. Resig*, 613 F.Supp. 1504 (N.D. Ind.1985) (use of unconfirmed EMIT test results as evidence in prison disciplinary hearings); *Jones v. U.S.*, 548 A.2d 35 (D.C. App.1988).

The State further urges that its burden of proof in a probation revocation case is by a preponderance of the evidence, not beyond a reasonable doubt. *See Scamardo v. State*, 517 S.W.2d 293 (Tex.Cr.App.1974); *Cardona v. State*, 665 S.W.2d 492 (Tex.Cr. App.1984); *Jenkins v. State*, 740 S.W.2d 435 (Tex.Cr.App.1983); that the trial judge in a revocation hearing is the trier of facts, the judge of the credibility of the witnesses and the weight to be given their testimony; *Naguin v. State*, 607 S.W.2d 583, 586 (Tex. Cr.App.1980); *Battle v. State*, 571 S.W.2d 20 (Tex.Cr.App.1978); that when the sufficiency of the evidence is challenged, the

evidence must be viewed in a light most favorable to the trial court's findings. *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Cr.App.1981); and that appellate review is limited to a determination of whether the trial court abused its discretion. *Barnett v. State*, 615 S.W.2d 220, 222 (Tex.Cr.App. 1981), appeal dism'd, 454 U.S. 806, 102 S.Ct. 79, 70 L.Ed.2d 75 (1981).

Appellant agrees but argues that when the burden of proof is not met the trial court's decision to revoke probation constitutes an abuse of its discretion and calls for a reversal on appeal. *Battle v. State*, 571 S.W.2d 20 (Tex.Cr.App.1978); *Collins v. State*, 664 S.W.2d 375 (Tex.App.1983, no pet.).

We need not decide if the positive result of a single EMIT test as to the presence of cocaine metabolites, uncorroborated by a separate and independent test such as "GMCS," was sufficient to support the trial court's decision to revoke probation.

As pointed out in *Garcia v. State*, 571 S.W.2d 896, 900 (Tex.Cr.App.1978), a single use of a drug is not a "habit" for the purposes of a condition of probation that the defendant avoid injurious or vicious habits.[2] *See also Campbell v. State*, 456 S.W.2d 918 (Tex.Cr.App.1970); *Marshall v. State*, 466 S.W.2d 582 (Tex.Cr.App.1971); *Morales v. State*, 538 S.W.2d 629 (Tex.Cr. App.1976); *Chacon v. State*, 558 S.W.2d 874 (Tex.Cr.App.1977); *Stovall v. State*, 683 S.W.2d 891 (Tex.App.1985, pet. ref'd).

In *Campbell* the only evidence offered was the defendant's uncorroborated testimony that he used one barbiturate capsule. There it was held that the revocation of probation on the ground that the taking of one such capsule was "habit" in violation of the probationary condition requiring defendant to avoid injurious and vicious habits was an abuse of discretion.

In the instant case, if it can be said that the result of the single EMIT test was competent evidence that the appellant had

---

**2.** *Garcia* was a Travis County case involving the same wording as the probationary condition in the instant case.

ingested cocaine prior to the test, it did not establish a "habit."[3]

In reaching the conclusion that the trial court abused its discretion in revoking probation, this Court is bound by the record before us.

The judgment is reversed and the cause is remanded.

---

**3.** We pretermit any discussion about the advisability of clearly separating a probationary condition of abstinence from the *use* of drugs, narcotics and alcoholic beverages from one requiring a probationer to "avoid injurious and vicious *habits*" as suggested by the statute Tex.Code Cr.P.Ann. art. 42.12, § 6(a)(2). In the instant case it was alleged that appellant failed to avoid injurious and vicious habits not by the *use* of drugs, etc., but by submitting a positive urine specimen for cocaine.