883 F.2d 70
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
William THOMPSON; Craig Jones, Calvin T. Buggs, Isaiah
Simmons-El, Robert Gonzales, Carl L. Nicholson, William
Bunn, Benny F. Burton, Dino R. Cox, Frank L. Moody, Augustus
Green, William Chase, Lionel King, William Pope, and others
so situated in the present and future, Plaintiffs-Appellees,
v.
Frank A HALL, individually and in his official capacity as
Secretary of Public Safety and Correction for the State of
Maryland, Arnold J. Hopkins, individually and in his
official capacity as Commissioner of Correction for the
State of Maryland, William J. Kunkel, individually and in
his official capacity as Chairman of the Maryland Parole
Commission, William Devance, individually and in his
official capacity as Director of Division of Parole and
Probation for the State of Maryland, Orlando McElroy,
individually and in his official capacity as a
State-employed laboratory technician, Thomas Struble,
individually and in his official capacity as a Correctional
Officer at the Maryland House of Correction, Howard N.
Lyles, individually and in his official capacity as Warden
at Maryland House of Correction-Jessup, Dept. of Correction
of the State of Maryland, John P. Wilt, Warden, Jon P.
Galley, J. Brown Hardy, Zell Williams, Raymond Grimes, T.D.
Mister, Crance, Badge # 575, Charlotte Hall, David Barthlow,
Hearing Officer, Marsha Maloff, Satterfield, Hearing
Officer, Unknown Chemical Test Technician, W. Tilley,
individually and in his official capacity as Hearing Officer
for the Department of Corrections, Dave Green, individually
and in his official capacity as Classification Supervisor
for the Maryland House of Corrections, J. Hall, Captain,
D.L. Thomson, Sargeant, N.L. Covington, individually and in
his official capacity as Correctional Officer at the
Maryland House of Correction, H. Nichols, individually and
in his official capacity as Correctional Officer at the
Maryland House of Correction, A. Carter, individually and in
his official capacity as Correctional Officer & Chemical
Test Technician at the Brockbridge Correctional Facility in
Jessup, Maryland, John N. Conte, Warden, MCTC, Keith D.
Raines, CO-V, R.L. Wise, CO-IV, J. Violet, CO-II, Theodore
Purnell, Captain, John Wouldridge, Correctional Officer, R.
Bratles, Officer, CO-II, Chemical Test Technician, M.A.
Drake, CO-II, Chemical Test Technician; Ralph W. Packard,
individually and in his official capacity as Warden of the
Maryland House of Correction, Clarence Guienze, Friends
Medical Science Research Center, Inc., Defendants-Appellants
Carl L. NICHOLSON, Plaintiff-Appellant,
v.
Frank A. HALL, individually and in his official capacity as
Secretary of Public Safety & Corrections for the State of
Maryland, Arnold J. Hopkins, individually and in his
official capacity as Commissioner of Corrections for the
State of Maryland, William J. Kunkel, individually and in
his official capacity as Chairman of the Maryland Parole
Commission, William Devance, individually and in his
official capacity as Director of Division of Parole &
Probation for the State of Maryland, Ralph W. Packard,
individually and in his official capacity as Warden of the
Maryland House of Correction, W. Tilley, individually and in
his official capacity as Hearing Officer for the Department
of Corrections, Dave Green, individually and in his official
capacity as Classification Supervisor for the Maryland House
of Correction, J. Hall, Captain, D.L. Thomson, individually
and in his official capacity as CDS Officer at the Maryland
House of Correction, N.L. Covington, individually and in his
official capacity as Correctional Officer at the Maryland
House of Correction, H. Nichols, individually and in his
official capacity as Correctional Officer & Chemical Test
Technician at the Brock Bridge Correctional Facility in
Jessup Maryland, Defendants-Appellees.
 No. 88-6525.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 11, 1989.
Decided Aug. 14, 1989.
 
 Before DONALD RUSSELL, Circuit Judge, BUTZNER, Senior Circuit Judge, and KAREN LECRAFT HENDERSON, United States District Judge for the District of South Carolina, sitting by designation.
 Nancy L. Cook, Bruce Glassner (George Simons LaRoche, Appellate Advocacy Clinic, The Washington College of Law, on brief) for appellants/cross-appellees.
 Richard M. Kastendieck, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Dennis M. Sweeney, Deputy Attorney General, Alan D. Eason, Assistant Attorney General, on brief) for appellees/cross-appellants.
 PER CURIAM:
 
 
 1
 This is a consolidated action brought by inmates of the Maryland Division of Corrections, pursuant to 42 U.S.C. Sec. 1983, challenging the method used by prison officials to detect inmate drug use. At the center of this controversy is the use of an Enzyme Multiplied Immunoassay Technique ("EMIT") test, unconfirmed by a secondary analytical detection method, as the sole means of detecting drug use by Maryland Prison inmates. The District Court conducted a hearing at which it heard expert testimony concerning the reliability of the EMIT test. The Court then enjoined officials of the Maryland Division of Corrections from initiating punitive measures against inmates based solely upon the results of an unsubstantiated EMIT test. The Court, however, refused the inmates' request for expungement of their records and damages. Because we believe the EMIT test to be a constitutionally adequate method of drug detection, we affirm in part and reverse in part.
 
 I.
 
 2
 The EMIT test is used to detect the presence of various drugs in urine. At hearing, both expert testimony and documentation were introduced as to the scientific reliability of such a test. It was agreed that the EMIT test has approximately a 95%-98% confidence factor and that the test is generally accepted as a sound method of drug detection by members of the scientific community.
 
 
 3
 The unpermitted use by an inmate of drugs constitutes a violation of a "major rule" as defined in the Maryland Division of Corrections regulations. See Md.Div. of Corrections Regs. No. 105-1(A) and (B). A finding of drug use results in the imposition of punitive measures such as segregation, loss of work release status, loss of "good time" credits, loss of pre-release status, and reclassification from minimum to medium security status. The prisoners involved in this case assert that the use of unconfirmed positive results from the test as the sole basis for imposing these punitive sanctions violates their right to procedural due process under the Fourteenth Amendment.
 
 II.
 
 4
 It is conceded that constitutionally protected liberty interests are at stake here. See, e.g., Superintendent v. Hill, 472 U.S. 445 (1985); Hewitt v. Helms, 459 U.S. 460 (1983). Punitive measures were levied against each inmate only after a prison disciplinary hearing was held. When such hearings are held, an inmate must receive: (1) advance written notice of disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Wolff v. McDonnell, 418 U.S. 539, 563-567 (1974); see also Superintendent v. Hill, supra. Here, there is no written assertion by the inmates that the Wolff guidelines were not adhered to. If the Wolff guidelines are satisfied, prison officials must be given "wide ranging deference" in pursuing legitimate penological concerns. James v. North Carolina Prisoners Labor Union, 433 U.S. 119, 126 (1977), (here, curbing an unlawful drug epidemic). Such deference is essential "because the administrator ordinarily will, as a matter of fact in a particular case, have a better grasp of his dominion than the reviewing judge...." Bell v. Wolfish, 441 U.S. 520, 548 (1979). Accordingly, findings of prison disciplinary boards meet the minimum requirement of due process if they are supported by "some evidence" on the record. Superintendent v. Hill, 472 U.S. at 454.
 
 
 5
 The goal of due process is to safeguard citizens against the arbitrary deprivation of personal liberties. Due process "is a flexible concept," intended to ensure "fundamental fairness." Walters v. Nat. Ass'n. of Radiation Survivors, 473 U.S. 305, 320 (1984); see also Matthews v. Eldridge, 424 U.S. 319, 334 (1976). A prison setting presents a unique situation where disciplinary proceedings "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and have been lawfully incarcerated for doing so." Superintendent v. Hill, 472 U.S. at 454, quoting Wolff v. McDonnell, 418 U.S. at 561. Consequently, a court must balance the requirements of due process with the legitimate institutional needs of assuring that a volatile atmosphere be administered so as to protect the safety of inmates and guards alike, and preserving the disciplinary process as a means of rehabilitation. Superintendent v. Hill, 472 U.S. at 455; see also Ponte v. Real, 471 U.S. 491 (1985).
 
 
 6
 We hold that the EMIT test, scientifically recognized as a valid medical procedure, constitutes some evidence to support the imposition of disciplinary sanctions. See, e.g., Spence v. Farrier, 807 F.2d 753 (8th Cir.1986); Adkins v. Martin, 699 F.Supp. 510 (W.D.Okla.1988); Perzano v. Couglin, 675 F.Supp. 102 (S.D.N.Y.1987); Jensen v. Lick, 589 F.Supp. 35 (D.N.D.1984). The district court was impressed by the fact that EMIT testing does not have a 100% confidence factor. This concern is misplaced at law, however. We note that other forms of evidence, such as eyewitness testimony, universally recognized as legally sufficient, cannot be said to be 100% reliable. Further, we find no authority for the proposition that due process is a technology forcing concept rendering it incumbent upon the Government to employ the latest in scientific technology. The record clearly reflects that in pursuing legitimate penological goals, the Maryland Department of Corrections employed a well recognized scientific methodology to detect drug use. When balanced against the requirements of due process, we find that the use of such a scientifically recognized test to detect inmate drug use afforded the appellants all the process due them under the Constitution and interpreting case law.
 
 
 7
 Accordingly, the district court's grant of prospective relief is reversed, and the denial of the prisoners' request for expungement of their records is affirmed.
 
 AFFIRMED IN PART
 
 8
 REVERSED IN PART.