**Sylvester O. LOMAX and Roy Lee Jackson, Plaintiffs,**

v.

**Gary McCAUGHTRY, Thomas Borgen, Thomas Nickel, Andy Bath, Lt. Dean Fuller, Lynn Oestreich, and Ronald Giannoni, Defendants.**

**No. 89–C–263.**

United States District Court, E.D. Wisconsin.

March 15, 1990.

Sylvester O. Lomax, pro se.
Roy Lee Jackson, pro se.

Frank D. Remington, Asst. Atty. Gen., Wisconsin Dept. of Justice, Madison, Wis., for defendants.

## OPINION AND ORDER

CURRAN, District Judge.

Sylvester O. Lomax and Roy Lee Jackson, two prisoners in state custody, commenced the above-captioned civil rights lawsuit against seven state employees in their individual capacities. *See* Plaintiff's Brief in Support of Amended Complaint at 1. The plaintiffs, who are proceeding *pro se* and *in forma pauperis*, are seeking declaratory and injunctive relief, compensatory and punitive damages, and attorney fees and costs pursuant to 42 U.S.C. § 1983. They claim that the defendants violated their Fifth and Fourteenth Amendment rights to due process and equal protection in placing them in administrative detention and in finding them guilty of violating prison regulations following an adversary disciplinary hearing. They also allege that their Fourth, Eighth and Fourteenth Amendment rights, as well as various state regulations, were violated when the defendants required them to submit to drug tests on December 22, 1988. The court has jurisdiction over these claims under 28 U.S.C. §§ 1331 and 1343 and the doctrine of pendent jurisdiction.

The defendants answered, denying liability and asserting the affirmative defenses that the plaintiffs have failed to state claims upon which relief can be granted and that the defendants are entitled to qualified immunity from a suit for money damages. After the deadline for the taking of all discovery had passed, the parties filed cross-motions for summary judgment which are now fully briefed and ready for decision.

## I. PARTIES

The defendants have submitted proposed findings of fact identifying the parties as follows:

a. Plaintiff Sylvester O. Lomax at all times relevant to this action was incarcerated at the Waupun Correctional Institution (WCI), Post Office Box 351, Waupun, Wisconsin 53963-0351.

b. Plaintiff Roy Lee Jackson at all times relevant to this action was incarcerated at the Waupun Correctional Institution (WCI), Post Office Box 351, Waupun, Wisconsin 53963-0351.

c. Defendant Gary McCaughtry is employed by the Wisconsin Department of Health and Social Services, Division of Corrections (DOC), Waupun Correctional Institution (WCI), as Superintendent. McCaughtry has been employed by the State of Wisconsin since May 17, 1976 and he has been employed at WCI since December 4, 1988.

d. Defendant Thomas G. Borgen is employed by the Wisconsin Department of Corrections (DOC) as the Chief of Security Services, and has held this position since November, 1989. Prior to November, 1989, Borgen was employed by DOC at the Waupun Correctional Institution (WCI), as Associate Warden–Security. Borgen has been employed by the State of Wisconsin since 1967.

e. Defendant Thomas Nickel is employed by the Wisconsin Department of Corrections (DOC). Nickel has been employed by the State of Wisconsin since 1976 and at all times relevant to this action he was employed at WCI as security director.

f. Defendant Lynn Oestreich is employed by the Wisconsin Department of Corrections (DOC), Waupun Correctional Institution (WCI), as Administrative Captain. Oestreich has worked for the State of Wisconsin since September 21, 1981 and he has been employed at WCI since February 1, 1987.

g. Defendant Andy Bath is employed by the Wisconsin Department of Corrections (DOC), Waupun Correctional Institution (WCI), as a security supervisor at the rank of lieutenant. Bath has been employed by the State of Wisconsin since November 30, 1981 and he has held his present rank since March 15, 1987.

h. Defendant Dean Fuller is employed by the Wisconsin Department of Corrections (DOC), Waupun Correctional Institution (WCI) as Investigative Lieutenant/Security Supervisor. Fuller has

been employed by the State since August 24, 1981 and he has held his present rank of lieutenant since August 30, 1987.

i. As the Investigative Lieutenant at WCI, Fuller is responsible for the investigation of crimes and other issues of major concern to the superintendent and security directors, *i.e.*, gang activities, illegal drug activities, staff corruption, battery to staff and inmates, etc. occurring at WCI.

j. In conjunction with his duties regarding investigation of illegal drug activities, Fuller is trained and certified by the Syva Corporation, developer of the EMIT st test, to perform urine tests using the EMIT st method.

k. Defendant Ronald Giannoni is employed by the Wisconsin Department of Corrections (DOC), Waupun Correctional Institution (WCI), as a social worker. Giannoni has been employed by the State of Wisconsin since September 1, 1958 and he has held his present position as a

Social Work Supervisor since December 10, 1978.

Defendant's [sic] Proposed Findings of Fact at ¶¶ 2–12 (citations omitted).

## II. DUE PROCESS CLAIMS

In their Complaint, as amended, and in their brief in support of summary judgment, Lomax and Jackson allege that they were deprived of procedural due process by one or more of the defendants in connection with two incidents—their placement in temporary lockup and their disciplinary hearings. The court will examine these claims separately.

### A. *Temporary Lockup*

■ According to the plaintiffs, the defendants deprived them of property rights and liberty interests conferred by the United States Constitution and section HSS 303.01 of the Wisconsin Administrative Code[1] without providing procedural due

---

1. Section HSS 303.11 of the Wisconsin Administrative Code, entitled "Temporary Lockup: use" provides that:

(1) An inmate may be placed in temporary lockup (TLU) by a security supervisor, security director, or superintendent;

(2) If the inmate is placed in temporary lockup by a security supervisor, the security director shall review this action on the next working day. Before this review and the review provided for in sub. (3), the inmate shall be provided with the reason for confinement in TLU and with an opportunity to respond, either orally or in writing. Review of the decision must include consideration of the inmate's response to the confinement. If, upon review, it is determined that TLU is not appropriate, the inmate shall be released from TLU immediately.

(3) No inmate may remain in TLU more than 21 days, except that the superintendent, with notice to the bureau director, may extend this period for up to 21 additional days for cause. The security director shall review the status of each inmate in TLU every 7 days to determine whether TLU continues to be appropriate. If upon review it is determined the TLU is not appropriate, the inmate shall be released from TLU immediately.

(4) An inmate may be placed in TLU and kept there only if the decision maker is satisfied that it is more likely than not that one or more of the following is true:

(a) If the inmate remains in the general population, the inmate will seek to intimidate a witness in a pending investigation or disciplinary action;

(b) If the inmate remains in the general population, he or she will encourage other inmates by example, expressly, or by their presence, to defy staff authority and thereby erode staff's ability to control a particular situation;

(c) If the inmate remains in the general population, it will create a substantial danger to the physical safety of the inmate or another;

(d) If the inmate remains in the general population, it will create a substantial danger that the inmate will try to escape from the institution; or

(e) If the inmate remains in the general population, a disciplinary investigation will thereby be inhibited.

(5) When an inmate is placed in TLU, the person who does so shall state the reasons on the appropriate form and shall include the facts upon which the decision is based. The inmate shall be given a copy of the form. Upon review, the security director shall approve or disapprove the TLU on the form.

(6) Conditions in TLU shall, insofar as feasible, be the same as those in the status from which the inmate came prior to TLU placement. An inmate who had been earning compensation shall continue to be compensated at the rate earned in his or her previous status, except that an inmate employed by corrections industries shall be compensated in accordance with s. HSS 313.08. If 1983 Wisconsin Act 528 does not apply to the inmate, he or she shall continue to earn extra good time credit. The inmate may

process. Lomax and Jackson say that, prior to being placed in temporary lockup (TLU), they did not receive prior notice or an opportunity for an adversarial hearing; that they were not given adequate facts supporting the lockup; and that they were placed in the lockup for punitive, not administrative, reasons.

The record shows that on December 22, 1988, defendant Fuller had received information from a confidential informant whom he considered to be reliable that Lomax and Jackson were using illegal drugs. Consequently, the plaintiffs were ordered to submit to urine tests. Lomax's test was positive for the presence of cocaine and Jackson's was positive for the presence of cocaine and THC. Both inmates were then placed in TLU. On that same day defendant Bath filled out forms entitled "Notice of Inmate Placed in Temporary Lockup" on which he stated that Lomax and Jackson were being placed in TLU because their presence in the general prison population could "erode the staff's ability to control a particular situation."[2] *See* Wis.Admin. Code § HSS 303.11(4)(b). Bath also feared that the plaintiffs would cause disruption by seeking the identity of the informer. *See* Affidavit of Andrew Bath at ¶ 3. Both Lomax and Jackson had an opportunity to respond to the charges and their responses were duly noted on the forms. The next day defendant Nickel reviewed the forms and decided to retain both Lomax and Jackson in TLU. They remained there until their disciplinary hearings which took place the first week of January of 1989.

It is well-established that a person need not be accorded procedural due process unless he is being deprived of a constitutionally protected property or liberty interest. *See Bigby v. City of Chicago*, 766 F.2d 1053, 1056 (7th Cir.1985), *cert. denied sub nom. Thoele v. City of Chicago*, 474 U.S. 1056, 106 S.Ct. 793, 88 L.Ed.2d 771 (1986). In this case Lomax and Jackson claim that they were deprived of a liberty interest in remaining in the general prison population and that they were deprived of a property interest in the procedures set forth in section HSS 303.11 of the Wisconsin Administrative Code. In a recently published opinion, *Russ v. Young*, 895 F.2d 1149 (7th Cir.1989, amended as opinion February 20, 1990), the United States Court of Appeals for the Seventh Circuit stated that the Due Process Clause of the Fourteenth Amendment confers no liberty interest in remaining out of temporary lockup and held that section HSS 303.11 confers no protected liberty interest. *See Id.*, at 1152–54. The Court explained that:

> [T]he prisoner has no right to determine his location within the confines of the prison. His assignment to a particular area is therefore dependent only on the subjective decision of the security officers, and therefore no federal liberty interest cognizable under the fourteenth amendment is created by the Wisconsin regulation. Because neither the United States Constitution, in and of itself, nor Wisconsin Administrative Code § HSS 303.11(4), being permissive in nature, create a protectable liberty interest in remaining in the general prison population [the prisoner's] ... being removed from that population cannot constitute a federal unconstitutional deprivation without due process of law.

*Russ v. Young*, 895 F.2d 1149, 1154 (7th Cir.1989; amended as an opinion February 20, 1990). *Cf. Dell'Orfano v. Scully*, 692 F.Supp. 226, 233–34 (S.D.N.Y.1988).

■ Under the *Russ v. Young* holding, Lomax and Jackson have not stated a claim for deprivation of a liberty interest. It also

---

be required to wear mechanical restraints, as defined in s. HSS 306.09(1), while outside the cell if the superintendent or his or her designee determines that the use of mechanical restraints is necessary to protect staff or inmates or to maintain the security of the institution.
Wis.Admin.Code § HSS 303.11.

**2.** Contrary to the plaintiffs' allegations, Lieutenant Bath did not state on the Notices that Lomax and Jackson were being placed in TLU for punitive reasons. He noted the infractions of prison regulations only as "Facts Upon Which Decision Is Based." *See* Affidavit of Lawrence Stahowiak at Exhibit 102 ("Notice of Inmate Placed in Temporary Lockup" filed regarding Roy Jackson); Affidavit of Sylvester O. Lomax at Exhibit IV ("Notice of Inmate Placed in Temporary Lockup" filed regarding Sylvester Lomax).

follows that they cannot maintain their claims for deprivation of any property interest in the procedures set forth in section HSS 303.11. Procedural protections are not themselves entitlements and do not create property interests. *See Olim v. Wakinekona,* 461 U.S. 238, 248–51, 103 S.Ct. 1741, 1746–49, 75 L.Ed.2d 813 (1983). Section HSS 303.11 contains no substantive rules of entitlement to property or liberty, so it confers no property rights in procedures on persons such as the plaintiffs.

In sum, the plaintiffs have not shown that they were deprived of any liberty or property right to which they were entitled under the United States Constitution or state law. Therefore, they had no right to due process before being placed in TLU, so the court will grant defendants' motion for summary judgment on these claims as a matter of law.

### B. *Disciplinary Hearings*

■■■ Next, Lomax alleges that he was deprived of procedural due process in connection with his disciplinary hearing. Lomax requested and received a full adversarial hearing on January 6, 1989. Based on his positive urine test and his own inculpatory statement, he was found guilty of intentionally using intoxicants (cocaine). Lomax contends that the evidence was insufficient to convict him; that the disciplinary committee members were not impartial; that he was not provided with the physical evidence or with advance notice of the time, place and date of the hearing; and that the facts supporting the charges were unclear. Jackson waived his right to a full due process hearing and admitted his guilt. Nevertheless, he joins in raising the same claims.

Documents in the record show that both Lomax and Jackson received the full panoply of procedural rights which the United States Constitution requires in connection with their disciplinary hearings. *See* Affidavit of Lawrence Stahowiak at Exhibits 105 and 106; Affidavit of Pamela S. Knick at Exhibits 113, 115, 116 & 117. They received advance written notice of the claimed violations; an opportunity to be heard; and a written statement detailing the evidence relied upon and the reasons for disciplinary action. *See Wolf v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Despite their complaints about the quality and quantity of the evidence, it is clear that substantial evidence (the positive urine tests) existed to justify the disciplinary committee's findings. *See generally Spence v. Farrier,* 807 F.2d 753 (8th Cir.1986). The plaintiffs have produced no probative evidence showing that they were denied due process in connection with these hearings. Therefore, summary judgment will be granted in favor of the defendants on all the plaintiffs' due process claims.

### II. FOURTH AND EIGHTH AMENDMENTS

■■ Both Lomax and Jackson contend that the defendants violated numerous state regulations in performing the urine tests and that the bodily intrusion violated their rights under the Fourth, Eighth and Fourteenth Amendments as well as the Wisconsin Constitution and Statutes. Urine testing is a search and seizure for purposes of the Fourth Amendment. *See Spence v. Farrier,* 807 F.2d 753, 755 (8th Cir.1986). However, because the United States Supreme Court has held that body cavity searches of prisoners may be conducted without probable cause or reasonable suspicion, *see Bell v. Wolfish,* 441 U.S. 520, 546, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979), courts have concluded that probable cause is not required to order a prisoner to submit to a urine test. *See, e.g., Pella v. Adams,* 638 F.Supp. 94, 98 (D.Nev. 1986).

■■■ In the instant case defendant Fuller had cause to believe that both Lomax and Jackson were using narcotics based on information from a usually reliable informant. Therefore, requiring the test was reasonable under the circumstances. What is more, the test is only minimally intrusive. *See generally Spence,* 807 F.2d 753 (describing the same EMIT st test used on Lomax and Jackson). The plaintiffs have made no showing that the test was tantamount to the cruel and unusual

punishment proscribed by the Eighth Amendment. Any violations of state law or regulations which the defendants may have committed in administering the tests do not constitute constitutional violations. Consequently, summary judgment will be granted in favor of the defendants on the plaintiffs' Fourth, Eighth and Fourteenth Amendment claims.

## III. EQUAL PROTECTION

█ Finally, the only other constitutional claim the court can find in the complaint is that the plaintiffs allege that they were deprived of equal protection because they were not allowed to have certain items of personal property (e.g., pork free shampoo and soap and electronic gear) in TLU, while inmates in the general population are allowed to have such items in their cells. They also claim that they were denied access to the law library, the hobby department, and religious services.

Subsection HSS 303.11(6) provides that: "Conditions in TLU shall, insofar as feasible, be the same as those in the status from which the inmate came prior to TLU placement." Wis.Admin.Code § HSS 303.11(6). To show that they complied with this directive, the defendants enumerate a long list of personal property that inmates in TLU are allowed to have in their cells. *See* Affidavit of Andrew Bath at ¶ 7. But even assuming that all the plaintiffs' allegations are true, any deprivation Lomax and Jackson suffered during the approximately two weeks they spent in TLU was *de minimis, see, e.g., Jones v. Smith,* 784 F.2d 149, 152 (2d Cir.1986) (denial of access to legal advance sheets during thirty-day administrative confinement found *de minimis*) and was imposed in order to accommodate the legitimate administrative concern that the plaintiffs' presence in the general population would erode "the staff's ability to control" the situation. Consequently, the plaintiffs have not stated claims based on facts which rise to the level of a constitutional equal protection violation and judgment will be granted dismissing these claims.

## ORDER

Because there are no material facts in dispute and because the defendants are entitled to judgment on the plaintiffs' federal constitutional claims as a matter of law, the court ORDERS that the Defendants' Motion for Summary Judgment (filed January 23, 1990) IS GRANTED IN PART AND DENIED IN PART. Summary judgment is granted in favor of the defendants on all the plaintiffs' federal constitutional claims and these claims are dismissed with prejudice. Because all federal claims have been dismissed before trial, the court need not retain jurisdiction over the pendent state claims. Therefore, all pendent state claims are dismissed without prejudice. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 721–29, 86 S.Ct. 1130, 1136–41, 16 L.Ed.2d 218 (1966).

IT IS FURTHER ORDERED that the plaintiffs' Motion for Summary Judgment (filed January 26, 1990) IS DENIED. *See* Federal Rule of Civil Procedure 56.

IT IS FURTHER ORDERED that this action IS DISMISSED.

IT IS FURTHER ORDERED that, pursuant to Federal Rule of Civil Procedure 58, the Clerk of Court shall enter a final judgment as a separate document. This judgment shall provide that:

This action came on for hearing before the Court, Honorable Thomas J. Curran, presiding, and the issues having been duly heard and a decision having been duly rendered,

IT IS ORDERED AND ADJUDGED

that the federal constitutional claims of plaintiffs Sylvester O. Lomax and Roy Lee Jackson which are set forth in the Complaint, as amended, are dismissed with prejudice. The plaintiffs' pendent state claims are dismissed without prejudice.

IT IS FURTHER ORDERED AND ADJUDGED

that this action is dismissed.

Done and Ordered.