Herman STRAUCH, Plaintiff,

v.

Joseph DEMSKIE, First Deputy Superintendent of Sing Sing Correctional Facility, sued in his individual and official capacity, Defendant.

No. 92 Civ. 1343 (SAS).

United States District Court,
S.D. New York.

June 28, 1995.

Noah M. Weissman, Deborah S. Gordon, New York City, for plaintiff Herman Strauch.

Susan L. Watson, Mark G. Peters, Asst. Atty. Gen., Office of the Atty. Gen., State of N.Y., Dept. of Law, New York City, for defendant Joseph Demskie.

*OPINION AND ORDER*

SCHEINDLIN, District Judge.

Plaintiff Herman Strauch sues Defendant Joseph Demskie, the Deputy Superintendent of the Sing Sing Correctional Facility, under 42 U.S.C. § 1983.[1]  Plaintiff now moves, pursuant to Fed.R.Civ.P. 56, for partial summary judgment on the issue of Defendant's liability.  Defendant has cross-moved for summary judgment.  For the reasons stated below, Defendant's motion is granted and Plaintiff's motion is denied.

**1.** Plaintiff also sued Thomas Coughlin, III, Commissioner of the New York State Department of Correctional Services, and John P. Keane.  However, by stipulation and order of March 10, 1995, Plaintiff voluntarily withdrew his claims against these defendants.

## I. BACKGROUND

Plaintiff was incarcerated at the Sing Sing Correctional Facility in Ossining, New York at the time of the occurrences that form the basis of his complaint. *See* Affidavit of Herman Strauch, January, 1995 ("Strauch Aff."), at ¶¶ 4–13. On July 5, 1990, Corrections Officer Glenn Zook procured a urine specimen that was attributed to Plaintiff; the urine tested positive for cocaine, and Plaintiff was charged in an Inmate Misbehavior Report with violating rule 113.12 (use of a controlled substance). *See* Affidavit of Noah M. Weissman, January 26, 1995 ("Weissman Aff."), Exhibit C: Inmate Misbehavior Report. At a Tier III hearing, Plaintiff pled not guilty, offered evidence that he could not have been the source of the urine tested because he was working in the shop at the time of the test, and was found not guilty. *See* Weissman Aff., Exhibits E and F: Hearing Transcript and Hearing Disposition Rendered Form.[2]

Five weeks after Plaintiff's acquittal, Demskie ordered Strauch to produce a urine specimen, which tested positive for cocaine. *See* Weissman Aff., Exhibit G: Request for Urinalysis Test Form. Demskie based his Request for Urinalysis on suspicion aroused by the initial positive result. *See* Weissman Aff., Exhibit L: Deposition of Joseph Demskie at 91. Demskie noted at the Tier III hearing on the second positive, "[Strauch] had a positive urine [test] in the past and his Tier III hearing was overturned because of a procedural error ... and that did not change the fact in my mind that he still had a positive test result." Transcript of Tier III hearing of October 11, 1990, ("Tr.") at 6. Plaintiff was convicted of using a controlled substance. *See* Tr. at 9.

Plaintiff then challenged the ruling in an Article 78 proceeding brought in the state court. *See Strauch v. Keane and Coughlin,* Index No. 1908–91 (Sup.Ct. Westchester Co. Oct. 22, 1991). Observing that New York Code R. & Regs., Title 7, 1020.4 permits non-random urinalysis testing of an inmate when a prison official has "reason to believe" that an inmate has taken a proscribed narcotic, Justice Carey found that Defendant Demskie did not have adequate "reason to believe" that plaintiff had used drugs. *Id.* Justice Carey therefore excluded the positive test and vacated the Tier III conviction.

Plaintiff then initiated a § 1983 suit in this District.[3] Both parties now move for summary judgment.

## II. DISCUSSION

### A. Qualified Immunity

#### 1. The Applicable Standard

To establish Defendant's liability under § 1983, Plaintiff must demonstrate:

(i) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (ii) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.

*Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993).[4] Plaintiff claims that Demskie's subjecting him to the September 15, 1990, urine test violated Strauch's Fourth Amendment right to be free from unreasonable searches and seizures, and that he thus is entitled to relief under § 1983.

The Supreme Court, however, has long recognized that government officials acting under color of law enjoy qualified immunity from § 1983 claims:

Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights

---

2. The question of whether the initial specimen might have contained Strauch's urine is immaterial as the court does not address the reasonableness of requiring Strauch to give a urine sample on September 15, 1990.

3. Judge Conboy previously denied Defendant's motion to dismiss. *See Strauch v. Coughlin,* 92 Civ. 1343, 1993 WL 88154 (S.D.N.Y.1993).

4. Neither party disputes that Defendant acted under color of state law when he forced Plaintiff to provide a urine specimen. Demskie clearly acted in furtherance of his responsibilities as First Deputy Superintendent of Sing Sing.

of which a reasonable person would have known.

*Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity is necessary to enable government officials to act without fear of later being held personally liable for violating a right that was not clearly established. Without such protection, officials would lack any clear guide as to what constitutes legitimate action. The potential for later liability would stifle much of the vigorous action needed to meet government responsibilities. *See id.* at 815, 102 S.Ct. at 2736–37.

■ In clarifying the *Harlow* standard, the Court has noted, "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987), citing *Harlow,* 457 U.S. at 819, 102 S.Ct. at 2738–39. The Second Circuit has explained:

> [s]everal guidelines have emerged from case law to clarify a court's inquiry into when a right is clearly established. First, the particular right under consideration must be defined with reasonable specificity. Next, the court must determine whether the decisional law of the Supreme Court or the appropriate circuit court has clearly established the right in question. The ultimate inquiry is whether in light of pre-existing law the unlawfulness of the defendant's official actions [was] apparent.

*Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989), citing *Anderson.* Because the relevant inquiry focuses on the knowledge of the defendant at the time he acted, the right must have been clearly established when the alleged infringement occurred. *See Robison v. Via,* 821 F.2d 913, 920 (2d Cir.1987).

### 2. *Applying the Qualified Immunity Standard to the Instant Case*

■ As of September 15, 1990—the date of the second test—there was no clearly established right for a prison inmate to be free from a non-random urine test not based on reasonable suspicion. Neither the Supreme Court nor the Second Circuit had held, as of

that time (or since), that non-random urine tests of prisoners not based on reasonable suspicion are unreasonable under the Fourth Amendment. The Supreme Court had held that urine testing is a search within the meaning of the Fourth Amendment. *See Skinner v. Railway Labor Executives' Association,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). However, given earlier Court decisions that distinguished between the Fourth Amendment protection enjoyed by the general public from that afforded prisoners, *see Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (holding that prison inmates have no reasonable expectation of Fourth Amendment-protected privacy in prison cells); *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (holding that probable cause need not be demonstrated before subjecting pretrial detainees to body-cavity searches), "the 'contours' of the right alleged to have been violated were not 'sufficiently clear that a reasonable official would understand that what he was doing violates that right.' " *Kaluczky v. City of White Plains,* 57 F.3d 202 (2d Cir.1995), citing *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. Because the courts have long recognized the importance of maintaining safe and secure prisons and the necessity of keeping drugs out of the prison system, it was not apparent in 1990 that Plaintiff had a constitutional right to be free from non-random urine testing not based on reasonable suspicion. It was objectively reasonable for Demskie to believe that his actions were consistent with the Court's mandate to employ all reasonable means to eradicate drugs from prisons, with an expansive definition of reasonableness shaped by the unique necessities of the prison context. *See Hudson,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393. Thus, Defendant is entitled to qualified immunity on Plaintiff's § 1983 claim.

### 3. *The "Law of the Case" Doctrine*

Plaintiff argues, however, that the "law of the case" requires this Court to follow Judge Conboy's prior finding that "on July 5, 1990, the date of the test in question, [it was] clearly established that an official must have

reasonable suspicion of drug use before ordering a urinalysis test for a specific individual. *See McDonell v. Hunter*, 809 F.2d 1302, 1308 (8th Cir.1987)." *Strauch v. Coughlin*, 92 Civ. 1343, 1993 WL 88154 (S.D.N.Y.1993).[5] This Court is not bound by the prior finding that the right Strauch alleges Demskie violated was clearly established as of September 15, 1990, because that finding is clearly erroneous.

■■■ The "law of the case" doctrine does not constitute a limitation on the Court's power, but merely expresses the general practice of refusing to reopen what has already been decided. *See Slotkin v. Citizens Casualty Co. of New York*, 614 F.2d 301, 312 (2d Cir.1979). The doctrine represents a discretionary option, not a hard-edged rule; it serves as "a cautionary admonition to be applied when the occasion demands it ... [and] judicial sensibilities should play no part in the disposition of suitors' rights." *Dictograph Products Co. v. Sonotone Corp.*, 230 F.2d 131, 134–35 (2d Cir.1956) (Hand, J.). Moreover, the efficiency concerns that underlie the doctrine do not support its application in cases where the original ruling is clearly erroneous. *See Virgin Atlantic Airways v. National Mediation Board*, 956 F.2d 1245, 1255 (2d Cir.1992), citing 18 Wright, Miller &

Cooper, *Federal Practice & Procedure* § 4478 at 790.

Judge Conboy relied upon *Skinner* and *McDonell* to find that the right in question was clearly established by the time Demskie forced Strauch to submit to a urine test. Neither *Skinner* nor *McDonell*, however, provides an adequate justification for his conclusion that the right described was clearly established in the prison context. As noted above, *Skinner* involved railroad workers and thus did not consider the limited Fourth Amendment protection afforded to prisoners.[6] In light of the broad language of *Hudson* and *Bell*,[7] *Skinner* did not clearly establish a Fourth Amendment right for prison inmates to be free from non-random urine tests that are not based on reasonable suspicion.

Reliance on *McDonell* is similarly misplaced given the facts of the instant case. *McDonell* does not address the rights of **inmates;** rather, it holds only that prison **guards** who have regular contact with prisoners may be subjected to random urine tests. *See McDonell*, 809 F.2d at 1308. In addition, *McDonell* is an Eighth Circuit case; thus, it contributes nothing to an analysis of whether it would be objectively reasonable for a New York State prison official to recognize as "clearly established" the right al-

---

**5.** The date cited in the opinion is incorrect; the first (random) test that was found to have been incorrectly attributed to Plaintiff took place on July 5, but the test ordered by Defendant (i.e., "the test in question") was not administered until September 15, 1990. *See* Weissman Aff., Exhibit G: Request for Urinalysis Test Form.

**6.** In *Skinner*, the Supreme Court held that *random* drug tests of railroad workers were reasonable because of the substantial public safety interest in keeping drugs out of that particular workplace. The Court recently extended acceptance of *random* drug testing by the government. In *Vernonia School District v. Acton*, — U.S. —, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995), the Court held that the random testing of public school athletes is reasonable given the substantial state interest in assuring that those students in particular are not using drugs. Also, three Circuits have held that *random* drug testing of prisoners is reasonable in light of the substantial state interest in maintaining a drug-free prison system. *See Lucero v. Gunter*, 17 F.3d 1347 (10th Cir.1994); *Forbes v. Trigg*, 976 F.2d 308 (7th Cir.1992); *Spence v. Farrier*, 807 F.2d 753 (8th

Cir.1986). The question in the instant case, however, is whether it was clearly established in 1990 that *non-random* urine tests of prisoners, not based on reasonable suspicion, are unreasonable and thus unconstitutional. Even today, this issue remains undecided.

The State does not concede that Demskie lacked reasonable suspicion to order Strauch to provide a urine sample. *See* Defendant's Memorandum of Law at 6. Given the Court's holding with respect to qualified immunity, the Court does not address the question of reasonable suspicion.

**7.** *See e.g., Hudson*, 468 U.S. at 528, 104 S.Ct. at 3201 ("[T]he prisoner's expectation of privacy [will] always yield to what must be considered the paramount interest in institutional security. We believe that it is accepted by our society that 'loss of freedom of choice and privacy are inherent incidents of confinement.'"); *see also Bell*, 441 U.S. at 546, 99 S.Ct. at 1878 ("The fact of confinement as well as the legitimate goals and policies of the penal institution limits ... retained constitutional rights.").

leged. *See Robison*, 821 F.2d at 920. Neither case cited by the Court supports the conclusion that the right alleged was clearly established when the disputed test was administered. Therefore, the prior ruling is clearly erroneous and the Court declines to follow it.

## III. *CONCLUSION*

For the reasons stated above, Plaintiff's motion for partial summary judgment is denied and Defendant's cross-motion for summary judgment is granted.

SO ORDERED.